IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN P. MANOOKIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLOYD FLIPPIN, in his official and | ) | |
| Individual capacities; DANA DYE, in her | ) | NO: 3:19-cv-0350 |
| official and individual capacities; JOHN | ) | |
| KITCH, in his official and individual | ) | Judge William L. Campbell, Jr. |
| capacities; JOE LOONEY, in his official | ) | |
| and individual capacities; ODELL | ) | Magistrate Judge Alistair E. Newbern |
| HORTON, JR., in his official and | ) | |
| individual capacities; RUTH ELLIS, in | ) | |
| her official and individual capacities; | ) | |
| JODY PICKINS, in her official and | ) | |
| individual capacities; BRIDGET J. | ) | |
| WILLHITE, in her official and individual | ) | |
| capacities; and JIMMIE MILLER, in her | ) | |
| official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COMPLAINT**

The Defendants are all of the attorney members of the Board of Professional Responsibility of the Tennessee Supreme Court. The allegations of the Complaint, with rare exception, make no distinction between the various Defendants. The Complaint should be dismissed as to all of the Defendants, in both their official and individual capacities, for lack of subject matter jurisdiction and failure to state a claim, in accordance with Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

# INTRODUCTION

On September 21, 2018, the Tennessee Supreme Court, acting on a Petition for Temporary Suspension from disciplinary counsel for the Board of Professional Responsibility ("Board"), entered an Order of Temporary Suspension against Tennessee attorney Brian Manookian, Plaintiff herein, suspending him temporarily from the practice of law as provided in Tennessee Supreme Court Rule 9, § 12.3. By Order entered May 17, 2019, the Supreme Court entered an Order Granting Petition for Dissolution of Order of Temporary Suspension, which dissolved the temporary suspension subject to specified conditions. All of those conditions remain in effect.

The Complaint attempts to state a number of claims under 42 U.S.C. § 1983 arising from the temporary suspension proceedings. The principal aim of the Complaint, however, is to state a claim against the Defendants in their individual capacities for money damages for allegedly anticompetitive conduct under federal antitrust laws. But the authority on which Mr. Manookian relies does not recognize any such claim for money damages against state officials.

The central issue is whether Mr. Manookian was suspended by the State, which is entitled to state-action immunity from antitrust claims as enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307 (1943), or by an unsupervised non-sovereign board controlled by active market participants. And the answer is inescapable. The Defendants did not suspend Mr. Manookian. The Tennessee Supreme Court, which is vested by the Tennessee Constitution with the judicial power of the State, suspended Mr. Manookian. The Supreme Court's Order of Temporary Suspension is not an exhibit to the Complaint because its express terms defeat the antitrust claim.

Mr. Manookian can point to no authority where the disciplinary suspension of one individual member of a regulated profession has been recognized as a violation of antitrust laws. The authority on which he relies, *North Carolina Dental Examiners v. Federal Trade Commission*, 135 S.Ct. 1101

(2015), supports no such claim. *Id.* at 1114-15.[1] Moreover, if Mr. Manookian has stated an antitrust claim here, then any individual respondent attorney in disciplinary proceedings commenced by the Board can state a similar claim, thus derailing all attorney disciplinary proceedings under the authority of the Tennessee Supreme Court and its Rule 9.

The Board of Professional Responsibility is a state agency created by the Tennessee Supreme Court. It and its members in their official capacities are agents of the Supreme Court and arms of the State. The State of Tennessee has Eleventh Amendment immunity from suit in federal court, and it is not a person under § 1983. A suit against a state employee in his or her official capacity is a suit against the state. Accordingly, all Defendants in their official capacities enjoy Eleventh Amendment immunity from damage claims in federal court.

Board members sometimes engage in investigatory, prosecutorial, and judicial functions. To the extent any of them may be deemed to have participated in the temporary suspension of Mr. Manookian as alleged in the Complaint, Defendants enjoy absolute quasi-prosecutorial/quasi-judicial immunity from damages in both their official and individual capacities. In their individual capacities they also enjoy qualified immunity.

All of the alleged matters of professional misconduct that served as grounds for Mr. Manookian's temporary suspension are now the subject of ongoing state disciplinary proceedings convened pursuant to the authority of Tennessee Supreme Court Rule 9. Any alleged 42 U.S.C.

---

[1] Unlike the circumstances here, in *North Carolina Dental* a licensing board controlled by licensed dentists and not otherwise supervised by the State responded to complaints from dentists about teeth-whitening services being performed at relatively low prices by non-dentists—sometimes even at kiosks in malls—by unilaterally declaring, without statutory authority, that teeth whitening constituted the practice of dentistry and sending dozens of cease-and-desist letters on official stationery to practitioners and mall owners. The intended and actual effect was to shut down teeth-whitening services by unlicensed practitioners, thus eliminating an entire class of service providers and stifling competition so that dentists could continue to charge higher prices without threat of declining demand. The Federal Trade Commission sued the defendant board and won. *See North Carolina Dental*, 135 S.Ct at 1108-16. But no individual liability claims for money damages were asserted. *Id.* at 1115.

§1983 claims arising therefrom, including *Ex parte Young* claims, can be raised as defenses in those proceedings and in proceedings to lift the conditions of reinstatement. Consideration of those claims here is barred by the *Younger v. Harris* abstention doctrine. To the extent that state disciplinary proceedings pertaining to the temporary suspension have been concluded, this Court's review is barred by the *Rooker-Feldman* doctrine.

I. **PLAINTIFF'S ANTITRUST CLAIMS SHOULD BE DISMISSED BECAUSE AN ORIGINAL ORDER OF TEMPORARY SUSPENSION ISSUED BY THE TENNESSEE SUPREME COURT IS THE ACT OF THE SOVEREIGN AND IS ENTITLED TO STATE-ACTION *PARKER* IMMUNITY.**

In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307 (1943), the Supreme Court interpreted antitrust laws to confer immunity on anticompetitive conduct by States when they act in a sovereign capacity. *Parker*, 317 U.S. at 350-51, 63 S.Ct. at 313. *Parker* reasoned that although some state regulations limit competition to achieve public objectives, requiring all state regulations to conform to the mandates of the antitrust laws, thereby promoting competition at the expense of other values a State may deem fundamental, would impose an impermissible burden on the States' power to regulate. *Id.*; *North Carolina Dental*, 135 S.Ct. at 1109-10.

In *North Carolina Dental* the United States Supreme Court held that a "state board" controlled by "active market participants in the occupation the board regulates" must be actively supervised by the State in order to invoke state-action antitrust immunity under *Parker*. *North Carolina Dental*, 135 S.Ct. at 1114. The Supreme Court explained that the active supervision requirement applies only where "a State delegates control over a market to a non-sovereign actor," *id.* at 1110, but that active supervision "is an essential prerequisite of *Parker* immunity for any nonsovereign entity—public or private—controlled by active market participants." *Id.* at 1113. *North Carolina Dental* did not, however, limit the invocation of state-action *Parker* immunity when a State as sovereign engages in anticompetitive conduct.

4

The Complaint alleges that the Board is controlled by active market participants, the Defendants, that they are not actively supervised by the State, and that they are not entitled to *Parker* immunity for allegedly anticompetitive conduct, the temporary suspension of a single Tennessee attorney, Plaintiff Manookian.[2] The Complaint expressly states that the Board suspended Mr. Manookian, alleging that "[s]ince 'temporarily' suspending Mr. Manookian from the practice of law, the BPR has taken extreme measures to keep Mr. Manookian's suspension in place." [Complaint, Doc. 1, pg. ID 3]

### A. The Tennessee Supreme Court, Not the BPR, Suspended Mr. Manookian.

The Complaint fails to disclose that Mr. Manookian was suspended not by the Defendants or the BPR, as such, but by the Tennessee Supreme Court through a Temporary Order of Suspension. That Order, which speaks for itself, should have been, but is not, an exhibit to the Complaint. Accordingly, a copy is attached hereto as Exhibit 1.[3]

---

[2] Even if state-action *Parker* immunity did not apply, Mr. Manookian can point to no authority where individual liability for money damages for violations of the antitrust laws has been imposed on members of a state professional regulatory board for taking disciplinary action authorized by state law against a single professional subject to that board's jurisdiction. *Cf. Conrad v. Beshear*, No. 3:17-cv-00056-GFVT, 2017 WL 3470917 at *8 (E.D. Ky. Aug. 11, 2017). Supreme Court Rule 9 and the Rules of Professional Conduct set forth in Rule 8 are concerned with the professional and ethical conduct of licensed attorneys. They make no exception for Mr. Manookian, who perceives himself to be a member of a sub-category of approximately 20 elite medical malpractice plaintiffs' attorneys. [Complaint, Doc. 1, pg. ID 25] Ironically, if such a sub-category were to be recognized for antitrust purposes, Mr. Manookian does not allege that any Defendant is an active market participant among the elite group of approximately 20. In fact, he alleges that two of the Defendants defend medical malpractice actions. Simple logic thus dictates that those two Defendants have no economic incentive to limit participation in the elite group of approximately 20.

[3] In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the Supreme Court held that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss." In particular, the Court noted that courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* In *Gardner v. United States*, 443 Fed.Appx. 70, 73 (6th Cir. 2011), the Sixth Circuit held that courts may also consider "matters of public record, items appearing in the record of the case, and exhibits attached to the complaint" in ruling on a 12(b)(6) motion. Indeed, the Sixth Circuit has adopted a liberal view of what matters fall within the pleadings for purposes of 12(b)(6) motions. *Rodriguez v. Providence Community Corrections, Inc.*, 191 F.Supp.3d 758, 762 (M.D. Tenn. 2016). "Extrinsic materials that 'fill in the contours and details' of a complaint without adding anything new may be considered without converting the motion to one for summary judgment." *Id.* (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997); *Armengau*

The reason the Supreme Court's Order was not attached to the Complaint is obvious. Its express terms defeat Mr. Manookian's antitrust claims. It provides, in pertinent part:

> This matter is **before the Court** on the Petition of the Board of Professional Responsibility of the Supreme Court of Tennessee, by and through Disciplinary Counsel, for the temporary suspension of Brian Phillip Manookian from the practice of law, pursuant to Tenn. Sup. Ct. R. 9, § 12.3. The Petition has been authorized by the Chair of the Board of Professional Responsibility and is supported by the exhibits attached thereto.
>
> Based upon the Petition and the supporting exhibits, **the Court finds** that Brian Phillip Manookian, Respondent, poses a threat of substantial harm to the public as detailed by the exhibits to the Petition.
>
> IT IS THEREFORE, CONSIDERED, **ORDERED**, ADJUDGED, AND DECREED **BY THE COURT** THAT:
>
> 1. Brian Phillip Manookian is hereby temporarily suspended from the practice of law as provided in Tenn. Sup. Ct. R. 9, §12.3.

Order of Temporary Suspension (emphasis added), attached hereto as Exhibit 1. The Petition for Temporary Suspension to which the Order refers should have been attached to the Complaint as an exhibit, but it was not. Accordingly, a copy is attached hereto as Exhibit 2.

Contrary to the express allegations and oft-repeated implications of the Complaint,[4] it is obvious that the Tennessee Supreme Court, not the Board, suspended Mr. Manookian pursuant to

---

*v. Cline*, 7 Fed.Appx. 336, 344 (6th Cir. 2001). Here, Plaintiff's Complaint contains multiple references to various documents that are directly related to the instant lawsuit. But Plaintiff did not attach any of those documents as exhibits to his Complaint. Accordingly, Defendants attach as exhibits not only all documents that were specifically mentioned in the Complaint but others that should have been included in the first place. Other exhibits are publicly available orders of the Tennessee Supreme Court.

[4] Most of the allegations of the Complaint are conclusory and fail to meet the pleading requirements of Fed. R. Civ. P. Rule 8(a)(2), which requires that a complaint allege *sufficient* specific facts to make liability under a legal theory *plausible*. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). A sufficient complaint must include concrete factual allegations that support "all material elements" needed "to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)(citations omitted). Therefore, "threadbare recitals of the elements of a cause of action" accompanied by "legal conclusions masquerading as factual allegations will not suffice." *Iqbal*, 556 U.S. at 678; *Eidson*, 510 F.3d at 634.

Supreme Court Rule 9, § 12.3. That section expressly reserves the authority to suspend to the Supreme Court, and provides, in pertinent part:

> (a) On petition of Disciplinary Counsel and supported by an affidavit or declaration under penalty of perjury demonstrating facts personally known to affiant showing that an attorney . . . poses a threat of substantial harm to the public, **the Court** may issue an **order** with such notice as **the Court** may prescribe imposing temporary conditions of probation on said attorney or **temporarily suspending said attorney**, or both.

Tenn. Sup. Ct. R. 9, § 12.3(a) (emphasis added).[5]

The "extreme measures" to which the Complaint refers are all contemplated by Section 12.3 and include three petitions to dissolve the temporary suspension filed by Mr. Manookian. Copies are attached as Exhibits 3, 6, and 9, respectively. Pursuant to Section 12.3(d), those petitions were filed with the Clerk of the Supreme Court and served on Disciplinary Counsel. The petitions were then heard by a Board panel, which then filed its reports and recommendations with the Supreme Court. Copies of the reports and recommendations of the Board panel are attached as Exhibits 4, 7, and 10, respectively. The Supreme Court ruled on each report and recommendation. Copies of the Supreme Court's orders are attached as Exhibits 5, 8, and 11, respectively. The most recent order, dated May 17, 2019 (Exhibit 11), dissolves the temporary suspension subject to conditions, which remain in effect.

---

[5] In this case an affidavit of facts known personally to an affiant, such as is typically the case when an attorney has misappropriated funds, was not required because the Petition, as recited in the Order (Exhibit 1), was supported entirely by documentary exhibits. Neither Disciplinary Counsel nor the Board Chair had any power to effect a temporary suspension. Their role was, at most, prosecutorial in nature, thus entitling them to absolute quasi-prosecutorial immunity. No other Defendant had any involvement at all in imposing the temporary suspension.

Under *Parker* and *North Carolina Dental*, unless the Tennessee Supreme Court is a non-sovereign board controlled by active market participants to which the State has delegated control over the regulation of the practice of law, Mr. Manookian's antitrust claims fail as a matter of law.

### B. The Tennessee Supreme Court Is the State, and Its Rulings in Attorney Disciplinary Proceedings Are Acts of the State as Sovereign.

The Tennessee Supreme Court is created by the Tennessee Constitution and is vested with the judicial power of the State. Tenn. Const. art. VI, § 1; *Belmont v. Bd. of Law Examiners,* 511 S.W.2d 461, 463 (Tenn. 1974). It is the highest court in the judicial branch of the government of Tennessee. Its authority derives directly from the Tennessee Constitution, not from a delegation from some other branch or instrument of State government. And its duly appointed or elected Justices assuredly are not, and are not controlled by, "active market participants." The Tennessee Supreme Court is the State. Its orders in attorney disciplinary proceedings are acts of the sovereign. The history of its stature in Tennessee state government proves the point.

The Tennessee Supreme Court has not always been a co-equal judicial branch of state government. From 1796 to 1834, all courts were "subservient to the will of the legislature." *Belmont*, 511 S.W.2d at 463. That defect in constitutional government was corrected in the Constitution of 1834 and strengthened by the Constitution of 1870, which divides state government into three distinct branches, Executive, Legislative, and Judicial, and prohibits each branch from exercising a power conferred upon another branch. *Id.*, Tenn. Const. art. II, §§ 1 and 2.

The licensing and regulation of attorneys practicing law in the courts of Tennessee are squarely within the inherent authority of the judicial branch. *Smith County Education Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984); *Bd. of Prof'l Responsibility v. Love,* 256 S.W.3d 644, 651 (Tenn. 2008). The Supreme Court's inherent power to regulate the practice of law derives directly from the "Court's position in the judicial branch of government" and the "doctrine of

8

separation of powers expressed in Article Two, Sections 1 & 2 of the Constitution." *In re Petition of Burson*, 909 S.W.2d 768, 772 (Tenn. 1995).

### C. Under Rule 9 the Tennessee Supreme Court Has Exclusive Authority to Impose Involuntary Discipline Upon Attorneys.

A license to practice law in this State is not a right. It is a distinct privilege. *Hughes v. Bd. of Prof'l Responsibility,* 259 S.W.3d 631, 641 and 651 (Tenn. 2008). The price of exercising that privilege is compliance with the rules established by the Tennessee Supreme Court, which is the source of the privilege. The Tennessee Supreme Court is the final disciplinary authority for violations of rules governing the legal profession, and it has the inherent power and the essential and fundamental right to administer those rules. *Hughes,* 259 S.W.3d at 640, 651. "[T]he Supreme Court has original and exclusive jurisdiction to promulgate its own Rules." *Smith County Edu. Ass'n*, 676 S.W.2d at 333 (quoting *Petition of Tennessee Bar Ass'n,* 539 S.W.2d 805, 807 (Tenn. 1976)).

Supreme Court Rule 9 sets out the exclusive procedures and remedies for the enforcement of attorney discipline. *See State of Tennessee ex rel. Moncier v. Jones*, 2013 WL 2492652 at *4, No. M2012-00778-COA-R3-CV, (Tenn. Ct. App., April 10, 2013)(*perm. app. denied*, Nov. 13, 2013). It was promulgated in the exercise of the Supreme Court's inherent supervisory power to regulate the practice of law, *see Brown v. Board of Professional Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000), "not . . . pursuant to a legislative delegation of power." *Bd. of Prof'l Responsibility v. Love,* 256 S.W.3d 644, 651 (Tenn. 2008). And it is a clear articulation of State policy. *See North Carolina Dental*, 135 S.Ct. at 1116.

The Supreme Court did not always actively exercise this regulatory authority. But in *Petition of Tenn. Bar Ass'n*, 532 S.W.2d 224 (Tenn. 1975), it ruled that disciplinary investigations and enforcements were not being handled at an acceptable level by local and regional voluntary bar associations, *id.* at 229, declared that it had the "inherent and exclusive power to supervise the conduct

9

of attorneys," *id.* at 230, created the Office of Disciplinary Counsel, and promulgated a new Rule 42, the precursor to current Supreme Court Rule 9. New Rule 42 provided in Section 1.1 that attorneys practicing law in Tennessee were "subject to the disciplinary jurisdiction of the Supreme Court [and] the Board," *id.* at 230, and in Section 5.1 created the Disciplinary Board, *id.* at 233, which upon the later adoption of Supreme Court Rule 9 became the Board of Professional Responsibility.

Rule 9 does not delegate the Supreme Court's authority to suspend erring attorneys. The Supreme Court retains sole authority to enter suspension orders. Under Rule 9, §15.4, all judgments of hearing panels or trial courts hearing appeals that suspend a respondent attorney must be reviewed and may be approved or modified by the Supreme Court. Under Section 28.1, "orders imposing disbarment, suspension, transfers to disability inactive status, or temporary suspension are effective upon entry." Therefore, no hearing panel or trial court judgment that suspends an attorney is effective without mandatory review and adoption or possible modification by the Supreme Court.

### D. The Supreme Court Actively Supervises Attorney Disciplinary Proceedings, Including Petitions for Temporary Suspension.

As explained above, the Tennessee Supreme Court as sovereign imposed the Order of Temporary Suspension. Mr. Manookian's antitrust claims thus fail for that reason alone. But even if this Court were to conclude that the Defendants were to some extent involved in the process leading to the temporary suspension, when the ultimate authority to suspend an attorney is reserved to a state supreme court, and when the acts of its agent disciplinary boards are taken pursuant to the court's rules, those acts are acts of the state itself and are entitled to state-action *Parker* immunity. *See Hoover v. Ronwin*, 466 U.S. 558, 568, 104 S.Ct. 1989, 1995 (1984); *Bates v. State Bar of Arizona*, 433 U.S. 350, 361, 97 S.Ct. 2691, 2697 (1977). Thus to the extent of the Defendants' involvement, they are entitled to state-action *Parker* immunity.

10

The active "supervision" of the Tennessee Supreme Court as the final decisionmaker is apparent not only from the provisions of Rule 9, but also from publicly available rulings in attorney disciplinary proceedings in which the Supreme Court frequently has modified the conclusions of lower tribunals. *See, e.g., Bailey v. Bd. of Prof'l Responsibility*, No. W2013-01979-SC-R3-BP (Tenn. 2014) (reversing Chancery Court's reduction of discipline) (Exhibit 12); *Bd. of Prof'l Responsibility v. Daniel*, No. E2017-01170-SC-R3-BP (Tenn. 2018) (modifying Chancery Court's imposition of discipline) (Exhibit 13); *Lockett v. Bd. of Prof'l Responsibility*, No. E2011-01170-SC-R3-BP (Tenn. 2012) (reversing Chancery Court's modification of punishment and reinstating suspension imposed by hearing panel) (Exhibit 14). The Supreme Court also can and does deny petitions for temporary suspension. *See, e.g., In Re: Kelley*, No. M2018-00986-SC-BAR-BP (Tenn. 2018) (denying Petition for Temporary Suspension) (Exhibit 15); *In Re: Hall*, No. M2018-003660SC-BAR-BP (Tenn. 2018) (denying Petition for Temporary Suspension) (Exhibit 16).

## II. MULTIPLE IMMUNITIES BAR ALL CLAIMS AGAINST ALL DEFENDANTS.

Sovereign immunity and *Parker* immunity are distinct doctrines. *See Rodgers v. Louisiana Bd of Nursing,* 665 Fed.Appx. 326, 329-30 (5th Cir. 2016). Defendants enjoy both sovereign immunity and multiple other absolute and qualified immunities.

### A. Eleventh Amendment Sovereign Immunity Bars Suits for Damages Against Board Members in Their Official Capacities.

The Board of Professional Responsibility is an arm of the state and an agent of the Supreme Court. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d 465, 470 (Tenn. 2003). The Board thus enjoys Eleventh Amendment immunity from suit in federal court, *see Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504 (1890); *Lawrence v. Chabot*, 182 Fed.Appx. 442, 450 (6th Cir. 2006) (board of bar examiners); *Dubuc v. Mich. Bd. Of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (same); and is not a person under § 1983. *See Will v. Mich. State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312

11

(1989). A suit against a state employee in his or her official capacity is a suit against the state. *See Will v. Michigan,* 491 U.S. at 71 (1989). Accordingly, all of the Defendants in their official capacities enjoy Eleventh Amendment immunity from damage claims in federal court. *Moncier v. Jones*, 557 Fed.Appx. 407, 409 (6th Cir. 2014) (recognizing Eleventh Amendment immunity from damage claims in official-capacity action against Chief Disciplinary Counsel for Tennessee Board of Professional Responsibility).

### B. Absolute Quasi-Prosecutorial and Quasi-Judicial Immunity Bar All Claims Against All Defendants in Both Their Official and Individual Capacities.

Both the Sixth Circuit and this Court have held that members of licensing and disciplinary boards that perform investigatory, prosecutorial, or judicial functions enjoy absolute quasi-prosecutorial/quasi-judicial immunity from damage claims. *See Moncier v. Jones*, 557 Fed.Appx. at 409 (holding that Chief Disciplinary Counsel for the Board was entitled to absolute, quasi-judicial immunity from damage claims against her personally); *Quatkemeyer v. Ky. Bd. of Medical Licensure*, 506 Fed.Appx. 342, 345-49 (6th Cir. 2012); *Watts v. Burkhart*, 978 F.2d 269, 274 (6th Cir. 1992); *Sanders v. Mich. Supreme Court*, 329 F.R.D. 174, 177-78 (E.D. Mich. 2019); *Kogan v. Tenn. Bd. of Dentistry*, No. 3:06-00789, 2008 WL 4158937 at *3-5 (M.D. Tenn. Sept. 8, 2008). This is especially so when procedural safeguards protect the due-process rights of persons subject to a board's jurisdiction. Those kinds of procedural safeguards pervade Rule 9.

In temporary suspension proceedings, Disciplinary Counsel files a Petition for Temporary Suspension under Rule 9, § 12.3(a). The Chair of the Board must approve the filing. That approval is required by Board policy, not by Rule 9. (copy of Board policy 2.23 attached as Exhibit 17) An attorney temporarily suspended by the Supreme Court pursuant Section 12.3(a) may at any time, pursuant to Section 12.3(d), file a Petition for Dissolution or Amendment, which "shall be set for immediate hearing before the Board or a [three-member] panel." The Board or a panel must then

12

"hear such petition forthwith and file its report and recommendation to the Supreme Court with the utmost speed consistent with due process."[6] The Supreme Court may then "modify its order [the original order of temporary suspension] if appropriate or continue such provision of the order as may be appropriate until final disposition of all pending disciplinary charges against said attorney." Rule 9, § 12.3(d),[7] *see also* Exhibit 11 (dissolving the temporary suspension subject to specified conditions).

Before formal disciplinary proceedings may be commenced, Disciplinary Counsel conducts an investigation. Rule 9, § 15.1(b). If Disciplinary Counsel recommends formal charges, the Board must approve the action under Section 15.1(d). The Petition for Discipline is then filed with the Board and served on the respondent attorney pursuant to Sections 15.2(a) and (b). After an answer to the Petition is filed, the matter is assigned pursuant to Section 15.2(d) to a hearing panel comprised of three district committee members, *see* Rule 9, § 2, not Board members. A respondent attorney in formal proceedings may be represented by counsel, issue subpoenas, engage in discovery, call witnesses in support of his or her position, and cross-examine opposing witnesses. Rule 9, §§ 15.2(f) and 19. After a formal hearing a respondent attorney has an appeal as of right to a special chancery or circuit court judge, and then to the Supreme Court. Rule 9, § 33. Throughout the process the respondent attorney may assert statutory and constitutional objections. *See Danner v. Bd. of Prof'l*

---

[6] Usually due process requires a hearing before a deprivation of property or liberty occurs. But the Sixth Circuit has held that "the failure to provide a pre-deprivation hearing does not violate due process in situations where a government official reasonably believed that immediate action was necessary to eliminate an emergency situation and the government provided adequate post-deprivation process." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 486 (6th Cir. 2014). The immediate post-deprivation process afforded by Section 12.3(d) fulfills this due process requirement.

[7] In temporary suspension proceedings under Section 12.3 Board members have no meaningful involvement in the process leading to an initial Supreme Court ruling and no involvement in the decisional process, which is reserved exclusively for the Supreme Court. *See* Rule 9, § 12.3(a); *see also* section I.A., above. And in dissolution or modification proceedings under Section 12.3(d), the role of the Board panel is to report and recommend. The Supreme Court decides the matter and issues an order to effectuate it.

*Responsibility*, 277 Fed.Appx. 575, 579 (6th Cir. 2008). These objections are subject to review by the trial court judge, § 33.1(b), and thereafter by the Supreme Court, which applies the same standard of review as the trial court judge. *See Mabry v. Bd of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014).[8]

As illustrated above, in disciplinary proceedings under Rule 9 the due process rights of respondent attorneys are protected by extensive procedural safeguards. Accordingly, all of Mr. Manookian's damage claims should be dismissed on grounds of absolute quasi-prosecutorial/quasi-judicial immunity.

### B. Qualified Immunity Bars Damage Claims Against Defendants in Their Individual Capacities.

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir.2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Occupy Nashville v. Haslam*, 769 F.3d 434, 441-42 (6th Cir. 2014)(quoting *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 5 (2013)); *Manzini v. The Florida Bar*, 511 Fed.Appx. 978, 981-83 (11th Cir. 2013). Although ordinarily applied in § 1983 actions, the rationale for qualified immunity applies with equal force in antitrust actions. Because qualified immunity is a defense not only from liability but also from suit,

---

[8] It is apparent that even in formal disciplinary proceedings the role of Board members is limited to preliminary investigatory and quasi-prosecutorial roles.

it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1370 (11th Cir.1998) (citation omitted). *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002).

Here, the actions of Defendant Board members were taken pursuant to the express authority of Supreme Court Rule 9. Mr. Manookian has no right, constitutional or otherwise, to practice law free from the conditions of that Rule. [See section I.C., above] Accordingly, to the extent the Defendant Board members were involved at all in Mr. Manookian's temporary suspension, they cannot possibly have acted in violation of any "clearly established" right, constitutional or otherwise. Therefore, in their individual capacities they are shielded from damage claims by qualified immunity. *See Occupy Nashville*, 769 F.3d at 441-47.

### III. THE *YOUNGER V. HARRIS* ABSTENTION DOCTRINE BARS FEDERAL COURT INVOLVEMENT IN ONGOING ATTORNEY DISCIPLINARY PROCEEDINGS UNDER TENNESSEE SUPREME COURT RULE 9.

The Sixth Circuit has held that attorney disciplinary proceedings convened pursuant to Tennessee Supreme Court Rule 9 fulfill the criteria for application of the *Younger v. Harris* abstention doctrine. *Younger* prohibits federal district court involvement in an action when three criteria are met: (1) the underlying proceedings constitute ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceedings. *Danner*, 277 Fed.Appx. at 577-80; *Moncier v. Jones*, No. 3:11-CV-301, 2012 WL 262984 at *5-8 (E.D. Tenn. Jan. 30, 2012) (appeal dismissed as moot, 6th Cir. No. 12-5220 (Nov. 20, 2012)) (citing *Danner).* Those criteria are met here.

All of the offenses that served as grounds for Mr. Manookian's temporary suspension are now the subject of formal disciplinary proceedings convened by the Board pursuant to Tennessee Supreme Court Rule 9. Those offenses are alleged in a Petition for Discipline and two supplemental Petitions.

15

The Petition was filed December 18, 2017. (Exhibit 18) The first Supplemental Petition was filed March 22, 2018. (Exhibit 19) The second Supplemental Petition was filed May 24, 2019. (Exhibit 20) Although the second Supplemental Petition for Discipline was not filed until after Mr. Manookian's Complaint was filed, the principles of *Younger* apply "in full force" if the state proceeding is filed before "any proceedings of substance on the merits have taken place in the federal court." *Moncier v. Jones*, 2012 WL 262984 at *5 (citing *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), *overruled on other grounds by Mandel v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977)). Therefore, the disciplinary proceedings constitute ongoing state judicial proceedings for *Younger* purposes. *See Danner*, 277 Fed.Appx. at 578-79.

There can be "no serious question that the regulation and discipline of attorneys is an important state function." *Danner*, 277 Fed.Appx. at 579. Accordingly, the second requirement for *Younger* abstention is met.

As to the third criterion, Mr. Manookian had the opportunity in his three Petitions for Dissolution to raise any statutory or constitutional challenge he may have had to the specific allegations in the Petition for Temporary Suspension, including the constitutionality of Section 12.3, and he continues to have that opportunity. So long as he is subject to the specified conditions in the Order Granting Petition for Dissolution of Order of Temporary Suspension (Exhibit 11) the procedures of Section 12.3(d) are still available to him. And he may challenge the grounds for the temporary suspension and the continuing specified conditions in the ongoing formal disciplinary proceedings. *See Danner*, 277 Fed.Appx. at 579-80; *see also* Rule 9, § 33.1(b) (providing for review of any "violation of constitutional or statutory provisions" by the trial court on appeal); *Mabry v. Bd of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) (providing the same standard of review before the Supreme Court); *Reguli v. Bd. of Prof'l Responsibility*, No. M2014-00158-COA-R3-CV,

16

2014 WL 5147807 at *3 (Tenn. Ct. App. Sept. 17, 2014) (holding that plaintiff's statutory and constitutional challenges should have been raised as defenses in the Rule 9 disciplinary proceedings).

All three of the criteria for *Younger* abstention are met here. Accordingly, Mr. Manookian's 42 U.S.C. § 1983 constitutional claims, including his *Ex parte Young* claim challenging the constitutionality of Rule 9, § 12.3, should be dismissed.

IV. **FEDERAL DISTRICT COURTS HAVE NO APPELLATE JURISDICTION, AND THE *ROOKER/FELDMAN* DOCTRINE BARS THIS COURT'S REVIEW OF ANY DISCIPLINARY PROCEEDINGS THAT HAVE CONCLUDED.**

On May 17, 2019, the Supreme Court entered an Order Granting Petition for Dissolution of Order of Temporary Suspension, which dissolved the temporary suspension subject to compliance with specified conditions. Mr. Manookian may accordingly argue that the temporary suspension proceedings are not ongoing for *Younger* purposes, but rather have been concluded. In that event, this Court would have no appellate jurisdiction to review the Order of Temporary Suspension.

A federal district court lacks subject matter jurisdiction to review the final orders of state courts. This is the *Rooker-Feldman* doctrine, which recently was summarized by the United States Supreme Court:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22 (2005). If the temporary suspension proceedings involving Mr. Manookian are not ongoing for *Younger* abstention purposes, there is only one other choice—they have concluded with the Order of Temporary Suspension. The federal district court for the Eastern District of Tennessee has held that review of a final order of the Tennessee Supreme Court issued in disciplinary proceedings under Rule

17

9 is barred by the *Rooker/Feldman* doctrine. *See Moncier v. Jones*, 2012 WL 262984 at *3; 28 U.S.C. § 1257.

## CONCLUSION

For all of the foregoing reasons the antitrust claims in Mr. Manookian's Complaint should be dismissed with prejudice for failure to state a claim; all of his claims for damages should be dismissed with prejudice on grounds of several applicable immunities and resulting lack of subject matter jurisdiction; and his constitutional claims for injunctive relief should be dismissed under *Younger* abstention. In the alternative, under the *Rooker-Feldman* doctrine this Court should decline to review the suspension orders for lack of subject matter jurisdiction.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


    s/Talmage M. Watts
TALMAGE M. WATTS (#015298)
Senior Assistant Attorney General
Attorney General's Office – Tax Division
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-6431 telephone
(615) 532-2571 fax
talmage.watts@ag.tn.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing Memorandum in Support of Motion of All Defendants to Dismiss Complaint has been served on the persons listed below by means of this Court's electronic filing system:

Daniel Horwitz (#032176)  
1803 Broadway, Suite #531  
Nashville, TN 37203  
daniel.a.horwitz@gmail.com  

*Local Pro Bono Counsel for Plaintiff*

Jarod Bona  
Aaron Gott  
BONA LAW PC  
4275 Executive Square, Suite 200  
La Jolla, CA 92037  
jarod.bona@bonalawpc.com  
aaron.gott@bonalawpc.com  

*Counsel for Plaintiff*

on this the 11th day of June, 2019.

    s/Talmage M. Watts  
TALMAGE M. WATTS  
Senior Assistant Attorney General