FILED

2018 MAR 22  AM 10: 00

BOARD OF PROFESSIONAL
RESPONSIBILITY
EXEC. SEC'Y

## IN DISCIPLINARY DISTRICT V
### OF THE
## BOARD OF PROFESSIONAL RESPONSIBILITY
### OF THE
## SUPREME COURT OF TENNESSEE

IN RE:  **BRIAN PHILIP MANOOKIAN,**   **DOCKET NO. 2017-2805-5-WM**
**BPR# 26455, Respondent,**
**An Attorney Licensed to**
**Practice Law in Tennessee**
**(Davidson County)**

---

### SUPPLEMENTAL PETITION FOR DISCIPLINE

---

Comes now the Petitioner, the Board of Professional Responsibility of the Supreme Court of Tennessee, by and through Disciplinary Counsel, pursuant to Rule 9 of the Rules of the Supreme Court, and files this Supplemental Petition for Discipline against Brian Philip Manookian.

1.      The Respondent, Brian Philip Manookian, is an attorney admitted by the Supreme Court of Tennessee to practice law in the State of Tennessee in 2007. The Respondent's most recent primary/office address as registered with the Board of Professional Responsibility is 45 Music Square West, Nashville, Tennessee 37203-3205. The Respondent's Board of Professional Responsibility number is 26455.

2.      Pursuant to Tenn. Sup. Ct. R. 9, § 8.1, any attorney admitted to practice law in Tennessee is subject to the disciplinary jurisdiction of the Supreme Court, the Board of Professional Responsibility, the Hearing Committee, hereinafter established, and the Circuit and Chancery Courts.

3.      Pursuant to Tenn. Sup. Ct. R. 9, § 1, the license to practice law in this state is a privilege and it is the duty of every recipient of that privilege to conduct himself at all times in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.  Acts or omissions by an attorney which violate the Rules of Professional Conduct

**EXHIBIT 19**

of the State of Tennessee shall constitute misconduct and be grounds for discipline.

4.  Mr. Manookian has failed to conduct himself in conformity with said standards and is guilty of acts and omissions in violations of the authority cited.  The Board of Professional Responsibility authorized the filing of formal charges on March 9, 2018.

### File No. 53808-5-SC – C. J. Gideon, Esq. - Informant

5.  On August 21, 2017, the Board of Professional Responsibility received a report of misconduct from C. J. Gideon. Esq., alleging ethical misconduct by Mr. Manookian. A true and exact copy of the report is attached hereto as Exhibit A.[1]

6.  On August 22, 2017, the Board sent a copy of the report to Mr. Manookian and requested a response within ten (10) days.  A true and exact copy of the Board's letter is attached hereto as Exhibit B.

7.  Mr. Manookian provided a response to the complaint on September 6, 2017. A true and exact copy of the response is attached hereto as Exhibit C.

8.  On September 16, 2016, Mr. Manookian, Brian Cummings, Esq., and Mark Hammervold, Esq., filed suit on behalf of Steven Shao in the Circuit Court for Davidson County against HCA Health Services of Tennessee, Inc. ("HCA"), et al, in Docket No. 16C2469.

9.  On July 25, 2017, Mr. Gideon entered an appearance on behalf of HCA.

10.  On August 19, 2017, at 9:29 p.m., Mr. Manookian sent an email to Mr. Gideon, in the representation of Mr. Shao, making reference to Mr. Gideon's daughter and her personal history. A true and exact redacted copy of the email is attached as Exhibit D. Exhibit D reads as follows:

---

[1] This and other exhibits have been redacted so as to remove the names of Mr. Gideon's daughter and son and his daughter's employer.

"Clarence-

I hear [Mr. Gideon's daughter] is working at [employer's name redacted]. What a fantastic opportunity; particularly given her history of academic failure and alcohol and substance abuse.

I happen to have some very close friends at [employer's name redacted].
I will make it a point to see what I can do regarding her prospects there.

I am reminded that it is good for us to keep apprised of each other's lives and the things we can do to influence them."

11.     On August 24, 2017, Mr. Gideon filed a Motion for Sanctions against Brian Manookian and Cummings Manookian, PLC, which motion was filed in part as a result of Exhibit D.

12.     The motion filed by Mr. Gideon included a redacted copy of Exhibit D.

13.     On September 5, 2017, Mr. Manookian filed his Response to Clarence Gideon's Motion for Sanctions. A true and exact redacted copy of the response is included within Exhibit C.

14.     The response filed by Mr. Manookian contained an unredacted copy of Exhibit D containing the name of Mr. Gideon's daughter and her employer.

15.     In footnote 1 of his response, Mr. Manookian made reference by name to Mr. Gideon's son. The footnote includes the following:

"Mr. Manookian's prior experience with Mr. Gideon's adult children is limited to having successfully represented his adult son in a matter involving Mr. Gideon's adult son exchanging sexually graphic emails with a much older man for the sexual gratification of the older man."

16.     In footnote 1 of his response, Mr. Manookian revealed information related to his representation of Mr. Gideon's son in an earlier lawsuit, without the son's permission, which was not generally known.

3

17. By sending Exhibit D to Mr. Gideon with no substantial purpose other than to embarrass him and his daughter, or to burden her in her employment relationship, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

18. By including an unredacted copy of Exhibit D in his Response to Clarence Gideon's Motion for Sanctions, with no substantial purpose other than to embarrass Mr. Gideon and his daughter, or to burden her in her employment relationship, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

19. By revealing confidential information to the disadvantage of his former client, Mr. Gideon's son, in his Response to Clarence Gideon's Motion for Sanctions, Mr. Manookian violated RPC 1.9(c).

20. By including the reference to Mr. Gideon's son in his Response to Clarence Gideon's Motion for Sanctions, with no substantial purpose other than to embarrass Mr. Gideon and his son, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

21. By Exhibit D, by including an unredacted copy of Exhibit D in his Response to Clarence Gideon's Motion for Sanctions and by his reference to Mr. Gideon's son in his Response to Clarence Gideon's Motion for Sanctions, Mr. Manookian engaged in conduct detrimental to the integrity and standing of the bar, and consequentially prejudicial to the administration of justice, in violation of RPC 8.4(d) (Misconduct).

22. By his actions, Mr. Manookian has violated the following Rules of Professional Conduct: 1.9(c) (Duties to Former Clients), 4.4(a)(1) (Respect for the Rights of Third Persons) and 8.4(a) and (d) (Misconduct).

4

## ALLEGED VIOLATIONS

23.     The acts and omissions by Mr. Manookian constitute ethical misconduct in violation

of the relevant portions of Rules of Professional Conduct 1.9(c), 4.4(a)(1) and 8.4(a) and (d):

### Rule 1.9(c)
### DUTIES TO FORMER CLIENTS

(c).     A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

### Rule 4.4(a)(1)
### RESPECT FOR THE RIGHTS OF THIRD PERSONS

(a)     In representing a client, a lawyer shall not:

(1)     use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

### Rule 8.4(a) and (d)
### MISCONDUCT

It is professional misconduct for a lawyer to:

(a)     violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(d)     engage in conduct that is prejudicial to the administration of justice.

## AGGRAVATING FACTORS

24.     After misconduct has been established, ABA Standards for Imposing Lawyer Sanctions, Section 9.2, provides for aggravating circumstances that may justify an increase in the degree of discipline to be imposed against him.

25.     Mr. Manookian's prior disciplinary offenses are an aggravating circumstance justifying an increase in discipline to be imposed against him.

5

26. Mr. Manookian's pattern of misconduct is an aggravating circumstance justifying an increase in discipline to be imposed against him.

27. Mr. Manookian has multiple offenses which is an aggravating circumstance justifying an increase in the degree of discipline to be imposed against him.

28. Mr. Manookian's substantial experience in the practice of law is an aggravating circumstance justifying an increase in discipline to be imposed against him.

## PRAYER FOR RELIEF

29. WHEREFORE, PETITIONER REQUESTS that a Hearing Panel be appointed to hear testimony and to receive evidence in this cause and to make such finding of fact and order such disciplinary action as it may deem appropriate.

Respectfully Submitted,

William C. Moody, BPR No. 6752
Disciplinary Counsel--Litigation
10 Cadillac Drive, Suite 220
Brentwood, Tennessee 37027
(615) 361-7500

## NOTICE TO PLEAD

TO: Brian Philip Manookian
c/o Brian S. Faughnan
40 South Main Street, 29th Floor
Memphis, Tennessee 38103

You are hereby notified that you are required to file your Answer with **Rita Webb, Executive Secretary, Board of Professional Responsibility, 10 Cadillac Drive, Suite 220, Brentwood, Tennessee 37027,** and serve a copy of your Answer upon Disciplinary Counsel within fifteen (15) days after service of this Supplemental Petition. If you fail to file an Answer, the allegations contained in the Supplemental Petition for Discipline shall be deemed admitted and a default judgment taken.

6

**Certificate of Service**

I certify that a copy of the foregoing has been sent to the Attorney for Respondent, Brian S. Faughnan, by First Class U.S. Mail, addressed to him at 40 South Main Street, 29th Floor, Memphis, Tennessee 38103, on this the _____ day of March, 2018.

William C. Moody

FILED

2019 MAY 23  AM 10: 25

BOARD OF PROFESSIONAL
RESPONSIBILITY

EXEC. SEC'Y

IN DISCIPLINARY DISTRICT V
OF THE
BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF TENNESSEE

IN RE:     BRIAN PHILIP MANOOKIAN,          DOCKET NO. 2017-2805-5-WM
           BPR# 26455, Petitioner;
           An Attorney Licensed to
           Practice Law in Tennessee
           (Davidson County)

---

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure, Respondent specifies the following undisputed material facts in support of his Motion for Summary Judgment.


1.     On January 4, 2017, Brian Manookian represented Genesis Diamonds and Boaz Ramon with respect to claims by and between Genesis Diamonds and Boaz Ramon and Layne Netherton.[1]

**RESPONSE:**


2.     On or before January 4, 2017, Boaz Ramon directed Brian Manookian to file suit against Layne Netherton.[2]

**RESPONSE:**

---

[1] Board of Professional Responsibility's Response to Request for Admission No. 1.
[2] Declaration of Brian Manookian at Paragraph 2. Board of Professional Responsibility's Response to Admission No. 3 (stating, that "[t]he Board lacks sufficient information to admit or deny this request.").

1

3.     On January 4, 2017 at 3:42 P.M. CST, Brian Manookian advised Layne Netherton that he would be filing suit against her on behalf of Genesis Diamonds for declaratory relief and for a restraining order.[3]

**RESPONSE:**


4.     On January 4, 2017 at 3:53 P.M. CST, Layne Netherton responded to Brian Manookian by stating, "I'll keep an eye out for your summons."[4]

**RESPONSE:**


5.     On January 4, 2017 at 4:04 P.M. CST, Brian Manookian requested that Ms. Netherton advise him if she would accept service of a lawsuit electronically.[5]

**RESPONSE:**


6.     On January 4, 2017 at 4:38 P.M. CST, Layne Netherton responded to Brian Manookian's inquiry regarding accepting service of a lawsuit electronically by stating, "Of course not. I actually have nothing better to do than to wait for the Sheriff to serve me."[6]

**RESPONSE:**


7.     Brian Manookian's customary practice is to include the defendant's place of employment in the body of the Complaint that he prepares on behalf of his plaintiff clients.[7]

---

[3] Board of Professional Responsibility's Response to Request for Admission No. 4.
[4] Board of Professional Responsibility's Response to Request for Admission No. 5.
[5] Board of Professional Responsibility's Response to Request for Admission No. 6.
[6] Board of Professional Responsibility's Response to Request for Admission No. 7.
[7] Declaration of Brian Manookian at Paragraph 3.

2

8.     In order to do so, Brian Manookian routinely verifies a defendant's place of employment prior to filing a lawsuit or completing a summons.[8]

**RESPONSE:**

9.     On January 4, 2017, Brian Manookian emailed Aaron Jamison and Craig Music for the purpose of determining whether Layne Netherton was currently employed with Micah Construction Group.[9]

**RESPONSE:**

10.     Brian Manookian emailed Aaron Jamison and Craig Music for the purpose of obtaining and verifying a location at which to serve a Defendant prior to issuing a completed summons.[10]

**RESPONSE:**

11.     On January 4, 2017, Brian Manookian was proceeding forward with his effort to file suit against Layne Netherton in accordance with his instructions from Boaz Ramon.[11]

**RESPONSE:**

12.     After January 4, 2017, Boaz Ramon directed Brian Manookian not to proceed with filing suit against Layne Netherton.[12]

---

[8] Declaration of Brian Manookian at Paragraph 3.
[9] Declaration of Brian Manookian at Paragraph 4.
[10] Declaration of Brian Manookian at Paragraph 4.
[11] Declaration of Brian Manookian at Paragraph 5.
[12] Declaration of Brian Manookian at Paragraph 5.

3

**RESPONSE:**

13.     Service of a lawsuit on an individual at their place of employment is proper and effective means of service.[13]

**RESPONSE:**

14.     A summons must include a valid address for service in order to be served by the Sheriff or other third-party.[14]

**RESPONSE:**

15.     A party may be served with a summons at their place of business or employment.[15]

**RESPONSE:**

16.     It is routine for a party to be served with a summons at their place of business.[16]

**RESPONSE:**

17.     A party may prefer to be served at their place of business as opposed to their place of residence.[17]

**RESPONSE:**

---

[13] Board of Professional Responsibility's Response to Request for Admission No. 8.
[14] Board of Professional Responsibility's Response to Request for Admission No. 11.
[15] Board of Professional Responsibility's Response to Request for Admission No. 12.
[16] Board of Professional Responsibility's Response to Request for Admission No. 13.
[17] Board of Professional Responsibility's Response to Request for Admission No. 14.

4

18.     Identifying a defendant's place of business as the location for service of a summons avoids publicly filing or pleading the defendant's place of residence.[18]

**RESPONSE:**

19.     Litigants may prefer not to have their personal residence identified in a public record such as a summons or Complaint.[19]

**RESPONSE:**

20.     Service of a summons is frequently achieved at less cost and effort at a party's place of business during normal business hours as opposed to a party's personal residence before or after working hours.[20]

**RESPONSE:**

21.     There is a substantial purpose to obtaining and verifying a location at which to serve a Defendant prior to issuing a completed summons.[21]

**RESPONSE:**

22.     There is a substantial purpose in obtaining and verifying an address for a party's place of business or employment for service of a summons.[22]

**RESPONSE:**

---

[18] Board of Professional Responsibility's Response to Request for Admission No. 16.
[19] Board of Professional Responsibility's Response to Request for Admission No. 17.
[20] Board of Professional Responsibility's Response to Request for Admission No. 21.
[21] Board of Professional Responsibility's Response to Request for Admission No. 18.
[22] Board of Professional Responsibility's Response to Request for Admission No. 19.

5

23.    There is a substantial purpose in obtaining and verifying an address for a party's place of business or employment for service of a summons in order to avoid service at a personal residence.[23]

**RESPONSE:**

24.    Layne Netherton was not employed by the Micah Group on January 4, 2017.[24]

**RESPONSE:**

25.    No action taken by Brian Manookian has resulted in actual embarrassment or burden to Layne Netherton with any employer.[25]

**RESPONSE:**

26.    Layne Netherton has never alleged from January 4, 2017 through March 15, 2019 that Brian Manookian has embarrassed or burdened her.[26]

**RESPONSE:**

27.    Layne Netherton has never communicated to the Board of Professional Responsibility that Brian Manookian has taken an action which embarrassed or burdened her.[27]

**RESPONSE:**

---

[23] Board of Professional Responsibility's Response to Request for Admission No. 20.
[24] Board of Professional Responsibility's Response to Request for Admission No. 25.
[25] Board of Professional Responsibility's Response to Request for Admission No. 24.
[26] Board of Professional Responsibility's Response to Request for Admission No. 26.
[27] Board of Professional Responsibility's Response to Request for Admission No. 27.

6

28.     Brian Manookian was previously employed by Clarence Gideon.[28]

**RESPONSE:**


29.     During the course of Brian Manookian's employment with Clarence Gideon, Brian Manookian and Clarence Gideon developed a close personal relationship, and Brian Manookian became personally acquainted with Clarence Gideon's family, at Clarence Gideon's invitation, including, staying with Clarence Gideon's family at their vacation residence and socializing with Clarence Gideon's family outside of work.[29]

**RESPONSE:**


30.     During the course of Brian Manookian's employment with Clarence Gideon, Brian Manookian and Clarence Gideon discussed and shared aspects of their personal lives and families.[30]

**RESPONSE:**


31.     During the course of Brian Manookian's employment with Clarence Gideon, Clarence Gideon further: discussed Laura Gideon's academic status with Brian Manookian; discussed Laura Gideon's alcohol abuse with Brian Manookian; discussed Laura Gideon's academic setbacks and lack of success, including specific circumstances regarding her alcohol use

---

[28] Declaration of Brian Manookian at Paragraph 6.
[29] Declaration of Brian Manookian at Paragraph 7.
[30] Declaration of Brian Manookian at Paragraph 8.

7

as it impacted her status as a student; and discussed Laura Gideon's substance abuse with Brian Manookian.[31]

**RESPONSE:**

32.    Prior to the transmission of the Gideon Email, Brian Manookian and Clarence Gideon had discussed Laura Gideon's academic failures, academic issues, alcohol and substance abuse issues, and employment prospects.[32]

**RESPONSE:**

33.    At the time of the transmission of the Gideon Email, Brian Manookian was personally acquainted with and had personal knowledge regarding Laura Gideon.[33]

**RESPONSE:**

34.    Kristin Cantrell is a longtime friend of Brian Manookian who works at William Morris Endeavor.[34]

**RESPONSE:**

35.    At the time of the transmission of the Gideon Email, Laura Gideon also worked at William Morris Endeavor.[35]

**RESPONSE:**

---

[31] Declaration of Brian Manookian at Paragraph 9.
[32] Declaration of Brian Manookian at Paragraph 10.
[33] Declaration of Brian Manookian at Paragraph 11.
[34] Declaration of Brian Manookian at Paragraph 12.
[35] Board of Professional Responsibility's Response to Request for Admission No. 57.

36. Immediately prior to the transmission of the Gideon Email, Kristin Cantrell called Brian Manookian specifically to inquire about Laura Gideon, including her personal and professional reputation and Brian Manookian's personal knowledge of the same.[36]

**RESPONSE:**

37. The Gideon Email was prompted by, and as a result of, an unsolicited and unexpected inquiry from an individual who works at William Morris.[37]

**RESPONSE:**

38. Brian Manookian was permitted to speak truthfully to Kristin Cantrell regarding Laura Gideon.[38]

**RESPONSE:**

39. Brian Manookian was permitted to give an unfavorable opinion of Laura Gideon in response to Kristin Cantrell's inquiry.[39]

**RESPONSE:**

40. On August 19, 2017, Brian Manookian had no obligation to refrain from speaking truthfully about Laura Gideon based upon his personal knowledge to any third-person.[40]

---

[36] Declaration of Brian Manookian at Paragraph 13.
[37] Declaration of Brian Manookian at Paragraph 14.
[38] Board of Professional Responsibility's Response to Request for Admission No. 99
[39] Board of Professional Responsibility's Response to Request for Admission No. 100
[40] Board of Professional Responsibility's Response to Request for Admission No. 98.

9

**RESPONSE:**

41. On August 19, 2017, Brian Manookian was permitted to speak truthfully to any third-person regarding Laura Gideon.[41]

**RESPONSE:**

42. On August 19, 2017, Brian Manookian was permitted to give his opinions regarding Laura Gideon to any third-person.[42]

**RESPONSE:**

43. Brian Manookian was complimentary of Laura Gideon in response to Kristin Cantrell's inquiry regarding Laura Gideon.[43]

**RESPONSE:**

44. Brian Manookian did not give an unfavorable opinion of Laura Gideon in response to Kristin Cantrell's inquiry.[44]

**RESPONSE:**

45. Brian Manookian tried to help Laura Gideon with respect to her prospects at William Morris Endeavor.[45]

---

[41] Board of Professional Responsibility's Response to Request for Admission No. 99.
[42] Board of Professional Responsibility's Response to Request for Admission No. 100.
[43] Declaration of Brian Manookian at Paragraph 14.
[44] Declaration of Brian Manookian at Paragraph 14.
[45] Declaration of Brian Manookian at Paragraph 14.

10

**RESPONSE:**

46.    Brian Manookian has not spoken untruthfully about Laura Gideon to any third-person.[46]

**RESPONSE:**

47.    Brian Manookian has not spoken untruthfully about Laura Gideon to any employer or co-worker of Laura Gideon.[47]

**RESPONSE:**

48.    Prior to and following the transmission of the Gideon Email, Brian Manookian has uniformly either been complimentary of Laura Gideon or declined to speak about Laura Gideon to any person associated with her work.[48]

**RESPONSE:**

49.    The content of the Gideon Email did not concern, or make reference to, any legal matter.[49]

**RESPONSE:**

---

[46] Declaration of Brian Manookian at Paragraph 15.
[47] Declaration of Brian Manookian at Paragraph 15.
[48] Declaration of Brian Manookian at Paragraph 15.
[49] Declaration of Brian Manookian at Paragraph 16.

11

50.    The content of the Gideon Email did not concern, or make reference to, any legal case involving Brian Manookian, Clarence Gideon, or Laura Gideon as attorneys or parties.[50]

**RESPONSE:**

51.    The content of the Gideon Email does not concern or reference any case or client of Brian Manookian.[51]

**RESPONSE:**

52.    Brian Manookian was not representing a client in sending the Gideon Email.[52]

**RESPONSE:**

53.    Brian Manookian was not representing Steven Shao in sending the Gideon Email.[53]

**RESPONSE:**

54.    Neither writing nor sending the Gideon Email constituted the practice of law.[54]

**RESPONSE:**

55.    The Gideon Email does not disclose any information regarding Laura Gideon that Clarence Gideon was not already aware of.[55]

**RESPONSE:**

---

[50] Declaration of Brian Manookian at Paragraph 16.
[51] Declaration of Brian Manookian at Paragraph 16.
[52] Declaration of Brian Manookian at Paragraph 17.
[53] Declaration of Brian Manookian at Paragraph 17.
[54] Declaration of Brian Manookian at Paragraph 17.
[55] Declaration of Brian Manookian at Paragraph 18.

12

56.    The Gideon Email does not disclose any information regarding Laura Gideon that Clarence Gideon had not previously disclosed and discussed with Brian Manookian.[56]

**RESPONSE:**

57.    Clarence Gideon filed a Motion in the Davidson County Circuit Court Case, Shao v. HCA Health Services, et al. specifically regarding the Gideon Email.[57]

**RESPONSE:**

58.    Prior to Clarence Gideon filing and quoting from the Gideon Email in Davidson County Circuit Court Case, Shao v. HCA Health Services, et al., Brian Manookian had not publicly disclosed the Gideon Email.[58]

**RESPONSE:**

59.    The Gideon Email does not contain any social security number, names of minor children, dates of birth, financial account numbers, or home addresses.[59]

**RESPONSE:**

---

[56] Declaration of Brian Manookian at Paragraph 18.
[57] Board of Professional Responsibility's Response to Request for Admission No. 81.
[58] Board of Professional Responsibility's Response to Request for Admission No. 83.
[59] Board of Professional Responsibility's Response to Request for Admission No. 86.

13

60.    No court rule or order required redaction of any portion of the Gideon Email prior to filing or quoting from it in Davidson County Circuit Court Case, Shao v. HCA Health Services, et al.[60]

**RESPONSE:**


61.    Clarence Gideon did not lack substantial purpose when he filed and quoted from the Gideon Email in Davidson County Circuit Court Case, Shao v. HCA Health Services, et al.[61]

**RESPONSE:**


62.    Brian Manookian did not lack substantial purpose to file and quote from the Gideon Email in Davidson County Circuit Court Case, Shao v. HCA Health Services, et al. in replying to Clarence Gideon's Motion which had already filed and quoted from the Gideon Email.[62]

**RESPONSE:**


63.    Less than 120 seconds after transmitting the Gideon Email, Brian Manookian wrote to his law partner, stating "I will try to help Laura to show CJ that we are bigger people."[63]

**RESPONSE:**


64.    The Gideon Email has not burdened or harmed Laura Gideon in any employment relationship.[64]

---

[60] Board of Professional Responsibility's Response to Request for Admission No. 87.
[61] Board of Professional Responsibility's Response to Request for Admission No. 84.
[62] Declaration of Brian Manookian at Paragraph 19.
[63] Board of Professional Responsibility's Response to Request for Admission No. 71.
[64] Board of Professional Responsibility's Response to Request for Admission No. 88 (stating, that "[t]here is no reasonable inquiry available to the Board that would make this information readily obtainable by the Board").

14

**RESPONSE:**

65.    The Gideon Email has not embarrassed Laura Gideon in any employment relationship.[65]

**RESPONSE:**

66.    Brian Manookian has never taken any action to interfere with, prejudice, or endanger Laura Gideon's employment with William Morris Endeavor or any other employer.[66]

**RESPONSE:**

67.    C.J. Gideon and Brian Manookian jointly represented C.J. Gideon, III (hereinafter "Jake Gideon") in an action against Michael Terrell (hereinafter "the Terrell Action") between 2009 and 2011. *See attached*, **Exhibit 1**.[67]

**RESPONSE:**

68.    **Exhibit 1** is a true and accurate copy of the publicly available documents designated Docket Entry No. 1 in Davidson County Circuit Court Case No. 10C3742.[68]

**RESPONSE:**

---

[65] Board of Professional Responsibility's Response to Request for Admission No. 89 (stating, that "[t]here is no reasonable inquiry available to the Board that would make this information readily obtainable by the Board").
[66] Declaration of Brian Manookian at Paragraph 20.
[67] Declaration of Brian Manookian at Paragraph 21.
[68] Board of Professional Responsibility's Response to Request for Admission No. 110.

15

69.  **Exhibit 2** is a true and accurate copy of the First Amended Complaint in C.J. Gideon, III v. Michael A. Terrell, filed January 28 (hereinafter the "Terrell FAC").[69]

**RESPONSE:**

70.  **Exhibit 2** is a true and accurate copy of the publicly available documents designated Docket Entry No. 9 in Davidson County Circuit Court Case No. 10C3742. [70]

**RESPONSE:**

71.  At the time of the Terrell Action, Jake Gideon was an adult over the age of eighteen.[71]

**RESPONSE:**

72.  The Terrell FAC states and discloses at Paragraph 5 that, at the time of the events giving rise to the Terrell Action, Jake Gideon was a nineteen-year-old college student.[72]

**RESPONSE:**

73.  The Terrell FAC states and discloses at Paragraph 6 that, at the time of events giving rise to the Terrell Action, Michael Terrell was a middle-aged man.[73]

**RESPONSE:**

---

[69] Board of Professional Responsibility's Response to Request for Admission No. 111.
[70] Board of Professional Responsibility's Response to Request for Admission No. 112.
[71] Board of Professional Responsibility's Response to Request for Admission No. 109.
[72] Board of Professional Responsibility's Response to Request for Admission No. 114.
[73] Declaration of Brian Manookian at Paragraph 22.

16

74.     At the time of the events giving rise to the Terrell action, Michael Terrell was a much older man than Jake Gideon.[74]

**RESPONSE:**

75.     The Terrell FAC states and discloses at Paragraphs 7, 8, and 21, that the Terrell Action was being brought as a result of Michael Terrell sending, requesting, and exchanging sexually graphic emails with Jake Gideon for Michael Terrell's own sexual gratification.[75]

**RESPONSE:**

76.     The Terrell Action was concluded before January of 2017.[76]

**RESPONSE:**

77.     The Terrell Action was a judicial proceeding.[77]

**RESPONSE:**

78.     The Terrell FAC is a record of a judicial proceeding.[78]

**RESPONSE:**

79.     The allegations included in Terrell FAC are public.[79]

**RESPONSE:**

---

[74] Declaration of Brian Manookian at Paragraph 22.
[75] Declaration of Brian Manookian at Paragraph 22.
[76] Board of Professional Responsibility's Response to Request for Admission No. 120.
[77] Board of Professional Responsibility's Response to Request for Admission No. 121.
[78] Board of Professional Responsibility's Response to Request for Admission No. 122.
[79] Board of Professional Responsibility's Response to Request for Admission No. 118.

17

80.     The publicly-pled and publicly-available allegations included in the Terrell FAC are not protected by the attorney-client privilege.[80]

**RESPONSE:**

81.     The Terrell FAC was not filed under seal and has never been subject to any restriction on its publication or dissemination.[81]

**RESPONSE:**

82.     From January 28, 2011 through March 14, 2019, Jake Gideon has taken no steps to seal or otherwise make confidential the Terrell FAC.[82]

**RESPONSE:**

83.     From January 28, 2011 through March 14, 2019, the information contained in the Terrell FAC was and remains public information available for dissemination by the news media.[83]

**RESPONSE:**

84.     The information contained and disclosed in the Terrell FAC has not caused actual or potential injury to Jake Gideon.[84]

---

[80] Board of Professional Responsibility's Response to Request for Admission No. 119.
[81] Board of Professional Responsibility's Response to Request for Admission No. 123.
[82] Board of Professional Responsibility's Response to Request for Admission No. 125.
[83] Board of Professional Responsibility's Response to Request for Admission No. 124.
[84] Board of Professional Responsibility's Response to Request for Admission No. 126 (stating that, "[t]here is no reasonable inquiry available to the Board to determine whether Mr. Manookian's disclosure of information in the First Amended Complaint has injured Jake Gideon").

18

**RESPONSE:**

85.    Mr. Manookian has not made any disclosure regarding the Terrell Action that has resulted in actual or potential injury to Jake Gideon.[85]

**RESPONSE:**

86.    Brian Manookian did not represent Attorney C.J. Gideon (Bar No. 006034) in the Terrell Action.[86]

**RESPONSE:**

87.    Attorney C.J. Gideon (Bar No. 006034) was not a client of Brian Manookian in the Terrell Action.[87]

**RESPONSE:**

88.    From January 28, 2011 through March 14, 2019, Jake Gideon has made no complaint regarding Mr. Manookian disclosing any information related to the Terrell Action.[88]

**RESPONSE:**

---

[85] Declaration of Brian Manookian at Paragraph 23. Board of Professional Responsibility's Response to Request for Admission No. 127 (stating that, "[t]here is no reasonable inquiry available to the Board to determine whether Mr. Manookian's disclosure of information in the First Amended Complaint has injured Jake Gideon").
[86] Board of Professional Responsibility's Response to Request for Admission No. 130.
[87] Board of Professional Responsibility's Response to Request for Admission No. 131.
[88] Board of Professional Responsibility's Response to Request for Admission No. 128.

19

89.    From January 28, 2011 through March 14, 2019, Jake Gideon has made no allegation that he has suffered an actual or potential injury as a result of Mr. Manookian disclosing any information related to the Terrell Action.[89]

**RESPONSE:**

Respectfully submitted,

Brian Manookian, No. 26455
45 Music Square West
Nashville, TN 37203
T: 615.266.3333
F: 615.266.0250

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been served by fax on the following:

William C. Moody
10 Cadillac Drive, Suite 220
Brentwood, TN 37027
T: 615.361.7500
F: 615.367.2480

This 22nd day of May 2019.

Brian Manookian

---

[89] Board of Professional Responsibility's Response to Request for Admission No. 129.

20