FILED
2019 MAY 24 PM 12:09
BOARD OF PROFESSIONAL
RESPONSIBILITY
EXEC. SEC.

**IN DISCIPLINARY DISTRICT V**
**OF THE**
**BOARD OF PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF TENNESSEE**

IN RE:    **BRIAN PHILIP MANOOKIAN,**        **DOCKET NO. 2017-2805-5-WM**
         **BPR# 026455, Respondent,**
         **An Attorney Licensed to**
         **Practice Law in Tennessee**
         **(Davidson County)**

---

## SECOND SUPPLEMENTAL PETITION FOR DISCIPLINE

Comes now the Petitioner, the Board of Professional Responsibility of the Supreme Court of Tennessee, by and through Disciplinary Counsel, pursuant to Rule 9 of the Rules of the Supreme Court, and files this Second Supplemental Petition for Discipline against Brian Philip Manookian.

1.    The Respondent, Brian Philip Manookian, is an attorney admitted by the Supreme Court of Tennessee to practice law in the State of Tennessee in 2007. The Respondent's most recent primary/office address as registered with the Board of Professional Responsibility is 45 Music Square West, Nashville, Tennessee 37203-3205. The Respondent's Board of Professional Responsibility number is 026455.

2.    Pursuant to Tenn. Sup. Ct. R. 9, § 8.1, any attorney admitted to practice law in Tennessee is subject to the disciplinary jurisdiction of the Supreme Court, the Board of Professional Responsibility, the Hearing Committee, hereinafter established, and the Circuit and Chancery Courts.

3.    Pursuant to Tenn. Sup. Ct. R. 9, § 1, the license to practice law in this state is a privilege and it is the duty of every recipient of that privilege to conduct himself at all times in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law. Acts or omissions by an attorney which violate the Rules of Professional Conduct

**EXHIBIT 20**

of the State of Tennessee shall constitute misconduct and be grounds for discipline.

4.  Mr. Manookian has failed to conduct himself in conformity with said standards and is guilty of acts and omissions in violations of the authority cited.

5.  The Board of Professional Responsibility authorized the filing of formal charges on December 8, 2017 in file number 44907-5-BG. The Board of Professional Responsibility authorized the filing of formal charges on May 21, 2019 in file numbers 54044-5-ES, 57549-5-SC, 57892-5-SC, 58076-5-SC, 58585-5-SC, 59125-5-SC, and 59104-5-SC.

## File No. 44907-5-BG

6.  On November 2, 2015, the Board of Professional Responsibility received a complaint of misconduct from Charles Kaplan, Esq., on behalf of David Blank alleging ethical misconduct by Mr. Manookian.

7.  On November 4, 2015, the Board sent a copy of the complaint to Mr. Manookian.

8.  Mr. Manookian provided a response to the complaint on November 16, 2015.

9.  At all times material hereto, Cummings Manookian, PLC ("Cummings Manookian") was and is a Tennessee limited liability company effective January 1, 2015.

10. At all times material hereto, Mr. Manookian and Brian Cummings were the members of Cummings Manookian. Wherever actions on the part of Cummings Manookian are alleged herein, it is alleged that the actions were those of Mr. Manookian.

11. Cummings Manookian engaged in internet advertising campaigns regarding various diamond retailers alleging diamond over-grading including Solomon Brothers in Atlanta, Georgia, the Golden Nugget in Philadelphia, Pennsylvania, Mervis Diamond Importers in Washington D.C., International Diamond Center in Clearwater, Florida and the Diamond Doctor in Dallas, Texas.

2

12.     At all times material hereto, Boaz Ramon was the owner of Genesis Diamonds in Nashville, Tennessee and a client and personal friend of Mr. Manookian.

13.     Near the time that the advertising campaigns began regarding Solomon Brothers, the Golden Nugget, Mervis Diamond Importers and International Diamond Center, Mr. Ramon contacted an owner or executive of each.

14.     In his communications with the owners or executives of Solomon Brothers, the Golden Nugget, Mervis Diamond Importers and International Diamond Center, Mr. Ramon advised them to stop the harmful publicity done by the advertising campaigns by either making a settlement with Mr. Manookian or hiring Mr. Manookian as their attorney.

15.     As a result of the communications received from Mr. Ramon, Howard Solomon of Solomon Brothers contacted Mr. Manookian and entered into a Consulting/Engagement Agreement with Cummings Manookian to retain it to represent Solomon Brothers by which Solomon Brothers agreed to pay Cummings Manookian $20,000.00 per month for five years. A true and exact copy of the Consulting/Engagement Agreement is attached hereto as Exhibit A.

16.     On or about the time Exhibit A was executed, the internet advertising campaign regarding Solomon Brothers ceased.

17.     Neither Mr. Manookian nor Cummings Manookian performed any services for Solomon Brothers pursuant to Exhibit A.

18.     Diamond Consortium, Inc., d/b/a Diamond Doctor ("the Diamond Doctor"), was a diamond retailer in Dallas, Texas. David Blank was the owner and/or principal of the Diamond Doctor.

19.     In 2015, Cummings Manookian began an internet advertising campaign alleging diamond   over-grading   by   the   Diamond   Doctor,   including   the   websites,

3

"www.diamonddoctorlawsuit.com" and "www.diamonddoctorclassaction.com," Google, Facebook, YouTube, and print media including flyers and door-hangers.

20. Through its advertising, Cummings Manookian solicited clients to bring claims against the Diamond Doctor.

21. On February 3, 2016, the Diamond Doctor and Mr. Blank sued Mr. Manookian in the United States District Court for the Eastern District of Texas ("the lawsuit").

22. Mr. Solomon advised Mr. Blank that he had ended the advertising campaign regarding Solomon Brothers by entering into the Consulting/Engagement Agreement.

23. After filing suit against Mr. Manookian, Mr. Blank initiated telephone conversations with Mr. Manookian for the purpose of negotiating an agreement for the Diamond Doctor to retain Cummings Manookian as its attorneys in exchange for which Cummings Manookian would cease its advertising campaign and would refrain from filing any suits against the Diamond Doctor.

24. During these telephone conversations, Mr. Manookian advised Mr. Blank that he already represented several clients regarding diamond over-grading by the Diamond Doctor.

25. Mr. Manookian sent Mr. Blank a draft of a Consulting/Engagement Agreement. A true and exact copy of the agreement is attached hereto as Exhibit B.

26. Mr. Manookian proposed to Mr. Blank that they execute an agreement calling for the Diamond Doctor to pay Cummings Manookian $25,000 per month for a term of ten years.

27. While Mr. Manookian and Mr. Blank were negotiating a possible agreement, Cummings Manookian ceased its advertising campaign.

28. The negotiations between Mr. Manookian and Mr. Blank did not result in an agreement.

4

29. After negotiations ended, Cummings Manookian resumed its advertising campaign.

30. The Cummings Manookian internet advertising campaign was undertaken at least in part for the purpose of coercing the Diamond Doctor to enter into a Consulting/Engagement Agreement whereby the Diamond Doctor would pay Cummings Manookian a substantial sum of money.

31. Cummings Manookian entered into nine or more engagement agreements with customers of the Diamond Doctor that responded to the advertising campaign.

32. Mr. Manookian did not file any lawsuits against the Diamond Doctor on behalf of clients alleging diamond over-grading.

33. Mark Hammervold is a Tennessee attorney who formerly practiced with Mr. Manookian and Mr. Cummings.

34. Customers of the Diamond Doctor who contacted Cummings Manookian as a result of its advertising campaign were referred by Cummings Manookian to Mr. Hammervold.

35. Mr. Manookian received no compensation for referring those clients to Mr. Hammervold.

36. Customers of Solomon Brothers, the Golden Nugget, Mervis Diamond Importers and International Diamond Center that contacted Cummings Manookian in response to the various advertising campaigns were referred to Mr. Hammervold.

37. Mr. Manookian received no compensation for referring those clients to Mr. Hammervold.

38. Mr. Cummings filed no lawsuits against Solomon Brothers, the Golden Nugget, Mervis Diamond Importers or International Diamond Center as a result of the various advertising campaigns.

5

39.    On May 4, 2017, Mr. Manookian incorporated Diamond Integrity Standards Foundation ("DISF") in Tennessee as a nonprofit corporation. A true and exact copy of the Tennessee Department of State "Filing Information" for DISF as of December 13, 2017 is attached hereto as Exhibit C.

40.    Cummings Manookian was the registered agent for DISF.

41.    DISF had the same address as Cummings Manookian.

42.    At the time DISF was incorporated, the trial in the lawsuit was set to begin on August 15, 2017.

43.    DISF was the alter ego of Cummings Manookian.

44.    On May 4, 2017, the domain name "ddvictimfund.com" was registered.

45.    The domain name "ddvictimfund.com" was registered anonymously via DomainsByProxy.com.

46.    A true and exact copy of the "Whois Results" domain registration information for "ddvictimfund.com" is attached hereto as Exhibit D.

47.    Cummings Manookian caused the "ddvictimfund.com" website to be created.

48.    The "ddvictimfund.com" website contained a link to the Cummings Manookian website.

49.    The "ddvictimfund.com" website was a Cummings Manookian advertisement seeking potential clients to sue the Diamond Doctor for diamond over-grading.

50.    On June 10, 2017, the domain name "ddtaxfraud.com" was registered.

51.    The domain name "ddtaxfraud.com" was registered anonymously via DomainsByProxy.com.

6

52.     A true and exact copy of the "Whois Results" domain registration information for "ddtaxfraud.com" is attached hereto as Exhibit E.

53.     Cummings Manookian caused the "ddtaxfraud.com" website to be created.

54.     The "ddtaxfraud.com" website was a Cummings Manookian advertisement seeking potential clients to sue the Diamond Doctor for diamond over-grading.

55.     The "ddtaxfraud.com" website does not contain the name of a lawyer or law firm assuming responsibility for the communication.

56.     The plaintiffs in the lawsuit filed an Emergency Motion to Show Cause.

57.     Mr. Manookian, Mr. Cummings and Cummings Manookian filed responses to the motion.

58.     A show cause hearing was held on July 12, 2017 during which Mr. Manookian was represented by counsel and testified.

59.     As a result of the show cause hearing, an order was entered by the magistrate judge ordering Mr. Manookian to submit to the plaintiffs: 1) the name of a DISF corporate representative whom the plaintiffs could depose by July 17, 2017; 2) the names of the 175 persons who received "ring-less voicemails"; and all documents related to his association with DISF.

60.     Mr. Manookian, Mr. Cummings and Cummings Manookian filed responses to the order.

61.     Through counsel, on July 21, 2017, Mr. Manookian informed the plaintiffs' attorney that he no longer represented DISF, the corporate representative of DISF was Felipe DeMase, and he did not have a list of the 175 persons receiving the "ring-less voicemails". A document submitted pursuant to the order was an attorney-client agreement between Cummings Manookian and Mr. DeMase purportedly signed by Mr. DeMase on June 7, 2017.

7

62.     The magistrate judge entered its Opinion and Order Regarding Sanctions on August 3, 2017. A true and exact copy of the Opinion and Order Regarding Sanctions is attached hereto as Exhibit F.

63.     In its Opinion and Order Regarding Sanctions, the magistrate judge made the following findings:

a.  Mr. Manookian and/or Cummings Manookian are one and the same as DISF. (Exhibit F, page 18)

b.  Mr. Manookian orchestrated the circumstances allowing for the creation of DISF and the publication of the "ddvictimfund.com" and "ddtaxfraud.com" websites containing Diamond Doctor customer information. (Exhibit F, page 18)

c.  Mr. DeMase was either a "straw man" or did not exist. (Exhibit F, page 18)

d.  The publication of the aforementioned websites by Mr. Manookian, Mr. Cummings and Cummings Manookian was a deliberate attempt to disrupt the integrity of the trial of the lawsuit by jury by improperly influencing witnesses and/or prejudicing the jury pool. (Exhibit F, page 19)

e.  The timing and publication of the websites constitute bad faith conduct by Mr. Manookian in abuse of the judicial process. (Exhibit F, pages 19-20)

f.  Mr. Manookian's actions in response to earlier orders were in bad faith. (Exhibit F, page 20)

g.  Though Mr. Manookian claims that Mr. DeMase was responsible for the creation of DISF, its incorporation application was submitted on May 4, 2017 but the client agreement was allegedly signed on June 7, 2017, the day before

8

the application was granted. Therefore, the documents submitted by Mr. Manookian do not accurately reflect the sequence of events relating to Mr. Manookian's representation of DISF. (Exhibit F, pages 20-21)

h. The client agreement was created by Mr. Manookian after the fact in specific response to the court's order which conduct constitutes fraud and an abuse of the judicial process. (Exhibit F, page 21)

i. DISF's status as a registered entity was terminated on July 21, 2017, the date Mr. Manookian was to comply with the court's orders. The fact that Mr. Manookian claimed he no longer represented DISF, and could not compel testimony by Mr. DeMase, constitutes bad faith on the part of Mr. Manookian. (Exhibit F, page 21)

j. The actions by Mr. Manookian, Mr. Cummings and Cummings Manookian were deliberately calculated to conceal information from the court. (Exhibit F, page 22)

k. DISF had no other reason to exist but to publicize negative information about the plaintiffs very close to trial. (Exhibit F, page 22)

l. Throughout the lawsuit, Mr. Manookian feigned adherence to ethical rules, while seemingly using those same ethical rules as a pretense to thwart the court's efforts to make a thorough and informed inquiry. (Exhibit F, page 23)

m. Mr. Manookian acted in bad faith and disrupted the litigation process. (Exhibit F, page 23)

n. DISF is an alter ego controlled by Mr. Manookian, Mr. Cummings and Cummings Manookian. (Exhibit F, page 27)

9

o. Mr. DeMase is a fictitious person. (Exhibit F, page 27)

64. By its Order of August 15, 2017, the Opinion and Order Regarding Sanctions was adopted by the district judge. A true and exact copy of the August 15, 2017 Order is attached hereto as Exhibit G.

65. Mr. Manookian engaged in the advertising campaigns against the Diamond Doctor, Solomon Brothers, the Golden Nugget, Mervis Diamond Importers and International Diamond Center, not in an effort to solicit clients in order to make claims against them, but instead as part of an extortion scheme, in concert with Mr. Ramon, to pressure them to enter into engagement agreements with him in order to stop the negative advertising.

66. By attempting to coerce the Diamond Doctor, Solomon Brothers, the Golden Nugget, Mervis Diamond Importers and International Diamond Center to enter into a Consulting/Engagement Agreement, Mr. Manookian committed the crime of extortion, T.C.A. § 39-14-112, in violation of Tennessee Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct) and/or Texas Disciplinary Rule of Professional Conduct 8.04(a)(1), (2) and (3) (Misconduct), Georgia Rule of Professional Conduct 8.4(a)(1) and (4) (Misconduct), Pennsylvania Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct), District of Columbia Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct) and Florida Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct).

67. By engaging in the various acts of dishonesty, deceit and bad faith set out in ¶ 63 above, Mr. Manookian violated Texas Disciplinary Rule of Professional Conduct 8.04(a)(3) and (4) (Misconduct).

68. By his actions, Mr. Manookian has violated the following Rules of Professional Conduct: Tennessee Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct) and/or Texas

10

Disciplinary Rule of Professional Conduct 8.04(a)(1), (2), (3) and (4) (Misconduct); Georgia Rule of Professional Conduct 8.4(a)(1) and (4) (Misconduct); Pennsylvania Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct); District of Columbia Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct); and Florida Rule of Professional Conduct 8.4(a), (b) and (c) (Misconduct).

### File Nos. 54044-5-ES and 57892-5-SC

69.     On or about July 23, 2018, the Board of Professional Responsibility received a report of misconduct alleging ethical misconduct by Mr. Manookian.

70.     On July 23, 2018, the Board sent a copy of the report to Mr. Manookian.

71.     Mr. Manookian provided a response to the report on October 18, 2018.

72.     May 7, 2015, David Chase filed suit in the Circuit Court for Williamson County, *Chase v. Stewart, et al*, Docket No. 2015-200, in which Mr. Manookian represented certain defendants, Chris Stewart, Emily Stewart, Jason Ritzen, Susan Martin, Bryan Everett, Lino Lovrenovic and Clayton McKenzie.

73.     By subpoenas, Mr. Manookian sought depositions and production of documents from non-parties to the case.

74.     The non-parties agreed to produce the documents, and give depositions, under the protection of a protective order.

75.     On August 28, 2015, the non-parties and Mr. Manookian executed an Agreed Limited Protective Order as to Certain Subpoenaed Non-Parties.

76.     On August 28, 2015, by email to the attorney for the non-parties, Mr. Manookian agreed to be bound by the protective order as of that date, as opposed to the date it was subsequently entered by the court.

11

77.    On August 28, 2015, subsequent to Mr. Manookian's agreement to be bound by the protective order, and in reliance upon it, the non-parties produced voluminous documents.

78.    At the time the documents were produced on August 28, 2015, the attorney for the non-parties stated to Mr. Manookian in a letter that they were designating those documents as "confidential" pursuant to the protective order.

79.    On September 16, 2015, Mr. Manookian deposed two of the non-parties, Dean and Sandra Chase.

80.    Subsequently, the attorney for the non-parties designated the depositions "confidential" pursuant to the protective order.

81.    On November 6, 2015, the court entered an order recognizing the non-parties' designation of the document production and deposition testimony as confidential.

82.    Beginning in December of 2015, Mr. Manookian provided his client in another matter, Jonathan King, with confidential documents and deposition testimony, in violation of the protective order.

83.    On January 12, 2016, Mr. Manookian filed suit on behalf of Mr. King in *King v. Chase*, Docket No. 16-0030-BC, in the Chancery Court for Davidson County.

84.    In the course of representing Mr. King in *King v. Chase*, Mr. Manookian filed, not under seal, confidential documents produced by the non-parties in *Chase v. Stewart*.

85.    The protective order provided that, "A Receiving Party may use Protected Material that is disclosed or produced by the Subpoenaed Parties in connection with this case [*Chase v. Stewart*] only for prosecuting, defending, or attempting to settle this litigation or future related litigation."

12

86. In an order entered October 28, 2016, Chancellor Ellen Lyle entered an order in *King v. Chase* specifically holding that *King v. Chase* and *Chase v. Stewart* were not related litigation, based on Mr. Manookian's statement to that effect.

87. Mr. Manookian's filing of documents in *King v. Stewart*, produced by the non-parties in *Chase v. Stewart*, was in violation of the protective order in *Chase v. Stewart*.

88. Sometime subsequent to the August 28, 2015 and November 6, 2015 orders in *Chase v. Stewart*, Mr. Manookian provided the confidential deposition transcripts and portions of the confidential document production to News Channel 4 WSMV, News Channel 5 WTVF and the Nashville Scene in violation of those orders.

89. On April 11, 2016, the non-parties filed their Petition for Civil Contempt and Motion for Sanctions in *Chase v. Stewart* alleging a violation of the protective order by Mr. Manookian in his dissemination of the depositions and document production.

90. On April 21, 2016, Mr. Manookian filed Response to the Non-Parties' Petitions in which he replied to the non-parties' allegation that he was responsible for disclosure of the confidential materials as "rank unsupported hypothesizing," "speculation and shameless, Johnny-come-lately histrionics," and "assorted real and imagined conduct" despite the fact that he was responsible for the disclosure of the confidential materials.

91. On September 23, 2016, the court held an evidentiary hearing on the Petition for Civil Contempt and Motion for Sanctions at which Mr. Manookian testified.

92. In his testimony on September 23, 2016, Mr. Manookian admitted providing the confidential depositions and documents to News Channel 4 WSMV, News Channel 5 WTVF and the Nashville Scene.

13

93.     In his testimony on September 23, 2016, Mr. Manookian testified that he provided

the confidential depositions and documents to News Channel 4 WSMV, News Channel 5 WTVF

and the Nashville Scene between October 4 and 6, 2019.

94.     The copies of the transcripts and documents provided by Mr. Manookian to News

Channel 4 WSMV, News Channel 5 WTVF and the Nashville Scene bore exhibit stickers placed

on them by, or at the direction of, Mr. Manookian as attachments to a response filed by him to

Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief, which motion was

not filed until October 8, 2015.

95.     The evidentiary hearing was not completed on September 23, 2106 and was set for

continuation on April 19, 2017 at 8:15 a.m.

96.     Without prior notice to the court or parties, at 8:00 a.m. on April 19, 2017, Mr.

Manookian filed Motion to Disqualify seeking the disqualification of Judge Michael Binkley who

was presiding over *Chase v. Stewart*, resulting in a delay in the hearing.

97.     The trial court denied the Motion to Disqualify and Mr. Manookian perfected an

interlocutory appeal to the Court of Appeals pursuant to Tenn. Sup. Ct. R. 10B. The Court of

Appeals issued its opinion August 29, 2017 finding as follows:

> As evidenced by the plain language of Rule 10B, as well as the explanatory
> comments, "a party may lose the right to challenge a judge's impartiality by
> engaging in strategic conduct." Duke, 398 S.W.3d at 670 (citing Kinard v. Kinard,
> 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). Recusal motions must be filed
> "promptly after the facts forming the basis for the motion become known, ... and
> the failure to assert them in a timely manner results in a waiver of a party's right to
> question a judge's impartiality." Kinard, 986 S.W.2d at 228. This requirement
> prevents a party from preserving an allegedly prejudicial event as an "ace-in-the-
> hole" to be used in the event of an adverse decision, see Bracey v. Bracey, No.
> M2014–01865–COA–R3–CV, 2016 WL 2585771, at *5 (Tenn. Ct. App. Apr. 26,
> 2016) (no perm. app. filed ), and it also prevents a party from preserving an
> allegedly prejudicial event to prevent or delay a potentially adverse decision. In In
> re: Samuel P., 2016 WL 4547543, at *6 (Tenn. Ct. App. Aug. 31, 2016), we held
> that a one year delay in raising allegedly prejudicial events caused a party to waive

14

his right to question the judge's partiality. We hold likewise here.

*Chase v. Stewart*, 2017 WL 3738466, at 3 (Tenn. Ct. App. Aug. 29, 2017)

A true and exact copy of the Court of Appeals opinion is attached hereto as Exhibit H.

98. The Motion to Disqualify filed by Mr. Manookian had no basis in law or fact but was filed for the purpose of delaying resolution of the Petition for Civil Contempt and Motion for Sanctions.

99. The evidentiary hearing was next set November 9, 2017 at 9:00 a.m.

100. Without prior notice to the court or parties, at 8:14 a.m. on November 9, 2017, Mr. Manookian filed a second Motion to Disqualify seeking the disqualification of Judge Binkley. Judge Binkley denied the motion and the hearing proceeded as scheduled but Mr. Manookian did not appear.

101. The second Motion to Disqualify filed by Mr. Manookian had no basis in law or fact but was filed for the purpose of delaying resolution of the Petition for Civil Contempt and Motion for Sanctions.

102. On July 20, 2018, Judge Binkley's Memorandum and Order ruling on the Petition for Civil Contempt and Motion for Sanctions was entered. A true and exact copy of the Memorandum and Order is attached hereto as Exhibit I. In Exhibit I, the following findings were made:

> (1) "On March 7, 2016, Mr. Manookian, together with the assistance of Mr. Hammervold, executed a different strategy, and began what this Court can only describe as a knowing, willful, and intentional course of conduct to deceive and defraud this Court in order to avoid punishment for their actions and to gain personal advantage in this case and the King v. Chase lawsuit." (page 26)
>
> (2) "Instead, Mr. Manookian submitted to this Court the only people he had disclosed the confidential information to were with the three attorneys mentioned above and law enforcement. However, as will be thoroughly examined below, this was a complete and blatant lie made under oath (with the penalty of perjury), which

15

is evident by Mr. Manookian's subsequent admission to this Court at the evidentiary hearing on September 23, 2016, that he did release the confidential information to the news media." (pages 29-30)

(3)    "After the conclusion of the proof in this matter and ample time to thoroughly examine the evidence, the Court has been utterly dumbfounded by Mr. Manookian's willingness to attempt to mislead the Court from uncovering his violations of the Court's Orders by any means necessary, and even go so far, as he did here, to claim the Non-Parties' Petitions were merely 'rank unsupported hypothesizing' when he very well knew he was the one who released the information to the news media." (page 31)

(4)    "This type of manipulative and unethical conduct is extremely concerning to this Court from a member of the Bar who clearly uses the rules of this Court to game the legal system in an intolerable manner over and over again." (page 62)

(5)    "After reviewing the entire record, Mr. Manookian's dishonest and deceitful conduct throughout this case, in looking back on all the examples of his ongoing and continuing fraud against this Court, his chronic dishonesty and lying under oath, this Court now has no doubt whatsoever Mr. Manookian does not deserve the benefit of the doubt as to his dishonest and fraudulent ongoing behavior in this Court." (page 63)

(6)    "Therefore, based upon the above analysis, the Court finds Mr. Manookian totally lacked credibility in this Court during the evidentiary hearing of this case by his continuing knowing, willful, and intentional misrepresentations to the Court throughout this lawsuit, his refusing to disclose the truth of all matters involving his obstructionist conduct and fraud, and his testimony, all of which shall be given the appropriate weight in accordance with this determination. It is clear from all the evidence cited Mr. Manookian cannot be believed under oath and Mr. Manookian's sworn oath to tell the truth while he is under oath means nothing to him. In addition, it is clear Mr. Manookian's giving 'his word' to his fellow lawyers means nothing, and he has no problem being deceitful and dishonest to his fellow lawyers. In addition, Mr. Manookian has no qualms about lying to judges on material issues." (pages 63-64)

(7) "For the above reasons, the Court finds Mr. Manookian in civil contempt for knowingly, willfully, and intentionally violating the Court's Order of November 6, 2015 on seven separate occasions." (page 116)

(8) Judge Binkley awarded sanctions against Mr. Manookian in the amount of $622,696.12. (page 118)

103.    By disclosing the confidential document production and deposition transcripts to

Jonathan King, in *King v. Chase* and to News Channel 4, News Channel 5 and the Nashville Scene,

16

in violation of the court's orders in *Chase v. Stewart*, Mr. Manookian violated RPC 3.4(c) (Fairness to Opposing Party and Counsel) and 8.4(d) (Misconduct).

104.    By filing the Motions to Disqualify in *Chase v. Stewart* without a basis in law or fact for the purpose of delaying the proceedings, Mr. Manookian violated RPC 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.5(e) (Impartiality and Decorum of the Tribunal) and 8.4(d) (Misconduct).

105.    By making false and/or misleading statements in pleadings, statements to the court and testimony in *Chase v. Stewart* regarding his disclosure of the confidential document production and deposition transcripts to members of the media, Mr. Manookian violated RPC 3.3(a)(1) (Candor Toward the Tribunal) and 8.4(c) and (d) (Misconduct).

106.    By his actions, Mr. Manookian has violated the following Rules of Professional Conduct: RPC 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal), 3.4(c) (Fairness to Opposing Party and Counsel), 3.5(e) (Impartiality and Decorum of the Tribunal) and 8.4(a), (c) and (d) (Misconduct).

**File Nos. 57549-5-SC, 58076-5-SC, 58585-5-SC and 59104-5-SC**

107.    On or about June 22, 2018, August 7, 2018, September 25, 2018 and November 13, 2018, the Board of Professional Responsibility received reports of misconduct alleging ethical misconduct by Mr. Manookian.

108.    On June 22, 2018, August 8, 2018, September 25, 2018 and November 14, 2018, the Board sent a copy of the reports to Mr. Manookian.

109.    Mr. Manookian provided responses to the reports on July 25, 2018 and February 27, 2019.

17

110. Mr. Manookian represented the plaintiff in a suit filed in the Circuit Court of Davidson County, *Shao v. HCA, et al* ("*Shao*").

111. In *Shao*, Michael Geracioti initially represented two defendants, Dr. Smith and Middle Tennessee Pulmonary Associates, PLLC.

112. Mr. Geracioti died unexpectedly on March 16, 2017.

113. On the same day as Mr. Geracioti's death, Mr. Manookian filed a motion for default against his clients.

114. On April 24, 2017, Judge Thomas Brothers entered an Order denying the motion for default, a copy of which is attached hereto as Exhibit J. At page 3 of Exhibit J, Judge Brothers stated, "Being a zealous advocate does not mean that one abandons all sense of professionalism, courtesy and common decency. It is clear that counsel for plaintiff was attempting to gain a tactical advantage by aggressively pursuing the claim for default on the very day of Mr. Geracioti's death…It is with regret that this Court must reprimand all of plaintiff's counsel for conduct that is unbecoming members of the Bar and officers of the court. Hopefully counsel will apply this constructively and thereby avoid such reprehensible behavior in the future."

115. On Saturday, August 19, 2017, at 9:29 p.m., Mr. Manookian sent an email to C. J. Gideon, attorney for another defendant in *Shao*, HCA. In that email, Mr. Manookian said:

> Clarence-
>
> I hear [Mr. Gideon's daughter] is working at [employer's name redacted]. What a fantastic opportunity; particularly given her history of academic failure and alcohol and substance abuse. I happen to have some very close friends at [employer's name redacted]. I will make it a point to see what I can do regarding her prospects there. I am reminded that it is good for us to keep apprised of each other's lives and the things we can do to influence them.

116. As a result of the email described in the previous paragraph, Mr. Gideon filed a motion for sanctions. On September 28, 2017, Judge Brothers entered an Order ruling on the

18

motion for sanctions, a copy of which is attached hereto as <u>Exhibit K</u>. Beginning at page 3 of <u>Exhibit K</u>, Judge Brothers found, "While Mr. Manookian claims otherwise, the Court finds the subject email can only be construed as a threat against the livelihood of Mr. Gideon's child...It can also be viewed as a blatant act of attempted intimidation meant to secure some tactical advantage over opposing counsel." At page 6 of <u>Exhibit K</u>, Judge Brothers, "The Court hereby expressly forbids Mr. Manookian from making any communication to counsel in this case that threatens, insults, disparages, demeans, or embarrasses them and/or their family members."

117. Attorney Phillip North represented Mr. Geracioti's clients in Shao subsequent to his death.

118. On March 30, 2018, Mr. Manookian wrote an email to Mr. North, Special Master Marsh Nichols and eight other attorneys, in which he stated in part:

> In addition, in response to Phillip North's specific inquiries regarding Judge Gayden, which Mr. North voiced at the most recent Case Management Conference in this matter; Plaintiff **does not oppose**:
>
> 1. Judge Gayden disclosing his actual experience, and resulting opinion, of Phillip North's reputation for truthfulness, honesty, and fidelity; and/or,
>
> 2. Judge Gayden disclosing his actual experience, and resulting opinion, on Phillip North's propensity for dishonesty, exaggeration and falsehood.

A true and exact copy of the March 30, 2018 email is attached hereto as <u>Exhibit L</u>.

119. In <u>Exhibit L</u>, made a false statement of fact by implying that Judge Gayden held the opinion that Mr. North had a propensity for dishonesty, exaggeration and falsehood.

120. Mr. Manookian made the statements regarding Mr. North in <u>Exhibit L</u> for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him.

121. On June 7, 2018, Mr. Manookian wrote an email to Mr. North and ten other attorneys, in which he stated:

19

I've had a chance to review your most recent non-substantive motion. I applaud you on finally filing something other than a "me-too, piggy-back" motion on Gideon Cooper's effort; if not your actual scholarship. Putting pen to paper is a great first step, Phillip! If you keep at it, you never know what you might achieve!

With that said, are you really arguing that you need pleadings unsealed because you claim to not have **access** to materials (1) that are not only publicly available by definition, but (2) were also previously served on you, and (3) are therefore in your actual possession?

If so, I'm happy to provide you with the documents you claim to need. Just let me know and I'll send them over. If [sic] think otherwise you risk the in-person embarrassment we all tried to downplay last Friday in court when you withdrew your last non-substantive motion on this topic while staring at your feet.

A true and exact copy of the June 7, 2018 email is attached hereto as Exhibit M.

122. Mr. Manookian made the statements to Mr. North in Exhibit M for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him.

123. On June 22, 2018, Mr. Manookian wrote an email to Mr. North and seven other attorneys, in which he stated in part:

Your tacky, dishonest tactics continue unabated in this case. I see you've sunk to the "bogus certificate of service" and "hold the mail game." That is embarrassing, even for you and your firm. The irony of [sic] implicit in seeking sanctions against me (for simply agreeing to allow you to seek testimony about your own character at your own request) via a motion that you dishonestly certified is, no doubt, lost on you.

***

I am disappointed, but not surprised, by your attempt to serve this sanctionable piece of garbage less than one business day before a response would have been due.

A true and exact copy of the June 22, 2018 email is attached hereto as Exhibit N.

124. Mr. Manookian made the statements to Mr. North in Exhibit N for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him.

125. On September 28, 2018, Special Judge Don Ash entered an Order granting motions for sanctions as a result of Exhibits L, M and N. A true and exact copy of the September 28, 2018

20

Order is attached hereto as <u>Exhibit O</u>. At page 9 of <u>Exhibit O</u>, Judge Ash made the finding that by <u>Exhibits L, M and N</u>, Mr. Manookian had repeatedly ignored the clear directives of the court and suspended Mr. Manookian from practicing in the Davidson County Circuit Courts for sixty days.

126.    On August 3, 2018, Mr. Manookian wrote a letter to Mr. North and multiple other attorneys, in which he stated in a footnote:

> Preliminary to lengthier phone call conducted at the gratuitous request of Retired Davidson County Circuit Court Judge Steve North, wherein Ret. Judge North states and opines upon personal knowledge, having served on the bench with Judge Tom Brothers and being the brother of Phillip North, that: Judge Tom Brothers is "corrupt" and has been for some time, that Judge Tom Brothers' "corruption" arises out of his financial needs; that Judge Tom Brothers' "corruption" has long resulted, and continues to result, in preferable, "corrupt" treatment for certain Nashville-based companies, which benefit from consistent, "corrupt" favorable rulings in Judge Brothers' courtroom, to the exclusion of justice; that such "corruption" has, and continues to, materially benefit, among others, C.J. Gideon and his firm, in his representation of certain "corrupt" clients; as well as lengthy disclosure and dissertation on Phillip North, all of which is material to the supposed grievances in Phillip North's "Motion for Third Round of Sanctions."

A true and exact copy of the August 3, 2018 letter is attached hereto as <u>Exhibit P</u>.

127.    The statements made by Mr. Manookian in <u>Exhibit P</u> concerning Judge Brothers' integrity were known by him to be false, or made with reckless disregard as to their truth or falsity.

128.    Judge North did not make the statements attributed to him by Mr. Manookian in <u>Exhibit P</u>.

129.    Mr. Manookian made false statements of fact in <u>Exhibit P</u> by attributing the statements concerning Judge Brothers' integrity to Judge North.

130.    On Saturday, August 4, 2018, Mr. Manookian wrote an email to Mr. North and nineteen other attorneys in which he stated:

> I see that my email and attachments are being repeatedly opened at the IP address associated with the consumer Comcast cable account for 109 Menees Lane, Madison, Tennessee. That address is the residential property where you have consistently lived with your parents (other than for a brief period of time from 1984-

21

1986 where you rented unit 602 at the Capitol Towers on Gay Street) until the North Family Trust essentially gifted you the property for $10.00. Upon investigation, this gifted piece of property in North Nashville, given to you for $10 by your parents, represents the sole piece of real property you own at 68 years of age. Further confirming that you have read my email, records additionally reflect that Mona Dale Cornwell North -- the woman for whom you left your wife and two minor daughters (Nicki and Neely) -- has registered a Jeep Grand Cherokee (VIN: 1C4RJFLG4JC274818, TN License Plate E66307) at the same address your parents gave you and where my email is being viewed. Please simply reply and confirm your brother Steve North's voice.

A true and exact copy of the August 4, 2018 email is attached hereto as <u>Exhibit Q</u>.

131.   Mr. Manookian made the statements to Mr. North in <u>Exhibit Q</u> for no substantial purpose other than to embarrass him, threaten him and attempt to gain a tactical advantage by intimidating him.

132.   On October 12, 2018, Special Judge Don Ash entered an Order on Motion for a Fifth Round of Sanctions as a result of <u>Exhibit Q</u>. A true and exact copy of the October 12, 2018 Order on Motion for a Fifth Round of Sanctions is attached hereto as <u>Exhibit R</u>. At page 4 of <u>Exhibit R</u>, Judge Ash made the finding that by <u>Exhibit Q</u>, Mr. Manookian had continued to conduct himself in a reckless manner in utter disregard of the Court's directives and suspended Mr. Manookian from practicing in the Davidson County Circuit Courts for one-hundred eighty days.

133.   By falsely implying in <u>Exhibit L</u> that Judge Gayden held the opinion that Mr. North had a propensity for dishonesty, exaggeration and falsehood, Mr. Manookian engaged in conduct involving dishonesty, deceit and misrepresentation in violation of RPC 8.4(c) (Misconduct).

134.   By making the statements regarding Mr. North in <u>Exhibit L</u> for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

22

135. By making the statements regarding Mr. North in <u>Exhibit M</u> for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

136. By making the statements regarding Mr. North in <u>Exhibit N</u> for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

137. By making statements in <u>Exhibit P</u> concerning Judge Brothers' integrity which were known by him to be false, or made with reckless disregard as to their truth or falsity, Mr. Manookian violated RPC 8.2(a)(1) (Judicial and Legal Officials).

138. By falsely attributing statements to Judge North concerning Judge Brothers' integrity in <u>Exhibit P</u>, Mr. Manookian engaged in conduct involving dishonesty, deceit and misrepresentation in violation of RPC 8.4(c) (Misconduct).

139. By making the statements regarding Mr. North in <u>Exhibit Q</u> for no substantial purpose other than to embarrass him and attempt to gain a tactical advantage by intimidating him, Mr. Manookian violated RPC 4.4(a)(1) (Respect for the Rights of Third Persons).

140. By his actions, Mr. Manookian has violated the following Rules of Professional Conduct: RPC 4.4(a)(1) (Respect for the Rights of Third Persons), 8.2(a)(1) (Judicial and Legal Officials) and 8.4(a) and (c) (Misconduct).

## ALLEGED VIOLATIONS

141. The acts and omissions by Mr. Manookian constitute ethical misconduct in violation of the relevant portions of Tennessee Rule of Professional Conduct 3.1, 3.2, 3.3(a)(1), 3.4(c), 3.5(e), 4.4(a)(1), 8.2(a)(1) and 8.4(a), (b), (c) and (d); Texas Disciplinary Rule of Professional Conduct 8.04(a)(1), (2), (3) and (4); Georgia Rule of Professional Conduct 8.4(a)(1) and (4);

Pennsylvania Rule of Professional Conduct 8.4(a), (b) and (c); District of Columbia Rule of Professional Conduct 8.4(a), (b) and (c); and Florida Rule of Professional Conduct 8.4(a), (b) and (c):

### Tennessee Rules of Professional Conduct

### Rule 3.1
### MERITORIOUS CLAIMS AND CONTENTIONS

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

### Rule 3.2
### EXPEDITING LITIGATION

A lawyer shall make reasonable efforts to expedite litigation.

### Rule 3.3(a)(1)
### CANDOR TOWARD THE TRIBUNAL

(a)     A lawyer shall not knowingly:

(1)     make a false statement of fact or law to a tribunal.

### Rule 3.4(c)
### FAIRNESS TO OPPOSING PARTY AND COUNSEL

A lawyer shall not:

(c)     knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

### Rule 3.5(e)
### IMPARTIALITY AND DECORUM OF THE TRIBUNAL

A lawyer shall not:

(e)     engage in conduct intended to disrupt a tribunal.

24

## Rule 4.4(a)(1)
## RESPECT FOR THE RIGHTS OF THIRD PERSONS

(a)      in representing a client, a lawyer shall not:

(1)      use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

## RULE 8.2(a)(1)
## JUDICIAL AND LEGAL OFFICIALS

(a)      A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons:

(1)      a judge.

## Rule 8.4(a), (b), (c) and (d)
## MISCONDUCT

It is professional misconduct for a lawyer to:

(a)      violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b)      commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c)      engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(d)      engage in conduct that is prejudicial to the administration of justice.

### Texas Disciplinary Rules of Professional Conduct

## Rule 8.04(a)(1), (2), (3) and (4)
## MISCONDUCT

(a)      A lawyer shall not:

(1)      violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not such violation occurred in the course of a client-lawyer relationship;

25

(2)     commit a serious crime or commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(3)     engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(4)     engage in conduct constituting obstruction of justice.

## Georgia Rules of Professional Conduct

### RULE 8.4(a)(1) and (4)
### MISCONDUCT

a.     It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to:

1.     violate or knowingly attempt to violate the Georgia Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

4.     engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation.

## Pennsylvania Rules of Professional Conduct

### Rule 8.4(a), (b) and (c)
### MISCONDUCT

It is professional misconduct for a lawyer to:

(a)     violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b)     commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c)     engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

## District of Columbia Rules of Professional Conduct

### Rule 8.4(a), (b) and (c)
### MISCONDUCT

It is professional misconduct for a lawyer to:

26

(a)    violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b)    commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c)    engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

### Florida Rules of Professional Conduct

### RULE 4-8.4(a), (b) and (c)
### MISCONDUCT

A lawyer shall not:

(a)    violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b)    commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c)    engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule.

142.    Texas Disciplinary Rule of Professional Conduct 8.04(a)(1), (2), (3) and (4), Georgia Rule of Professional Conduct 8.4(a)(1) and (4), Pennsylvania Rule of Professional Conduct 8.4(a), (b) and (c), District of Columbia Rule of Professional Conduct 8.4(a), (b) and (c) and Florida Rule of Professional Conduct 8.4(a), (b) and (c) are correctly set out in the preceding paragraph.

### AGGRAVATING FACTORS

143.    After misconduct has been established, ABA Standards for Imposing Lawyer Sanctions, Section 9.2, provides for aggravating circumstances that may justify an increase in the

27

degree of discipline to be imposed against him.

144.   Mr. Manookian's prior disciplinary offenses are an aggravating circumstance justifying an increase in discipline to be imposed against him.

145.   Mr. Manookian's dishonest or selfish motive is an aggravating circumstance justifying an increase in discipline to be imposed against him.

146.   Mr. Manookian's pattern of misconduct is an aggravating circumstance justifying an increase in discipline to be imposed against him.

147.   Mr. Manookian's multiple offenses are an aggravating circumstance justifying an increase in discipline to be imposed against him.

148.   Mr. Manookian's refusal to acknowledge the wrongful nature of his conduct is an aggravating circumstance justifying an increase in discipline to be imposed against him.

149.   Mr. Manookian's substantial experience in the practice of law is an aggravating circumstance justifying an increase in discipline to be imposed against him.

150.   Mr. Manookian's illegal conduct is an aggravating circumstance justifying an increase in discipline to be imposed against him.

## PRAYER FOR RELIEF

151.   WHEREFORE, PETITIONER REQUESTS that the Hearing Panel receive evidence in this cause and make such finding of fact and order such disciplinary action as it may deem appropriate.

Respectfully Submitted,

William C. Moody, BPR No. 6752
Disciplinary Counsel--Litigation
10 Cadillac Drive, Suite 220
Brentwood, Tennessee 37027
(615) 361-7500

28

## NOTICE TO PLEAD

**TO:** Brian Philip Manookian
45 Music Square West
Nashville, Tennessee 37203-3205

You are hereby notified that you are required to file your Answer with **Rita Webb, Executive Secretary, Board of Professional Responsibility, 10 Cadillac Drive, Suite 220, Brentwood, Tennessee 37027,** and serve a copy of your Answer upon Disciplinary Counsel within fifteen (15) days after service of this Second Supplemental Petition. If you fail to file an Answer, the allegations contained in the Second Supplemental Petition for Discipline shall be deemed admitted and a default judgment taken.

### Certificate of Service

I certify that a copy of the foregoing has been sent to the Respondent, Brian Manookian, by First Class U.S. Mail, addressed to him at 45 Music Square West, Nashville, Tennessee 37203-3205, on this the _____ day of May, 2019.

William C. Moody

29