**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

BRIAN P. MANOOKIAN,

*Plaintiff*,

vs.

FLOYD FLIPPIN et al.,

*Defendants*.

Civil Action No. 3:19-cv-00350

Judge William L. Campbell, Jr.
Magistrate Judge Alistair Newbern

---

## INITIAL CASE MANAGEMENT ORDER

---

A. JURISDICTION: **Plaintiff contends** the Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1337, 1343, 1367, 2201, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because plaintiff's claims arise under the U.S. Constitution and the antitrust laws of the United States.

**Defendants contend** that all claims against them for damages in their official capacities are barred by sovereign immunity. The Court thus lacks subject matter jurisdiction over those claims. Any claim aimed at review or modification of an order of the Tennessee Supreme Court should be dismissed under the *Rooker-Feldman* doctrine because a federal district court has no appellate jurisdiction. Defendants in both their official and individual capacities also contend that they are immune from claims for damages on grounds of absolute quasi-judicial/quasi-prosecutorial immunity. Furthermore, this Court should abstain from consideration of Plaintiff's Constitutional claims, including claims for injunctive relief, under the *Younger v. Harris* abstention doctrine.

Case 3:19-cv-00350 Document 32 Filed 07/16/19 Page 1 of 8 PageID #: 419

B.  BRIEF THEORIES OF THE PARTIES:

**For Plaintiff:**

Brian P. Manookian brings claims against the lawyer members of the Tennessee Board of Professional Responsibility (BPR) for violating both federal antitrust laws and the U.S. Constitution when it "temporarily" and indefinitely sought to suspend Mr. Manookian from practicing law based upon an email sent to another lawyer, which contained constitutionally protected out-of-court speech. The defendants' actions were done *ex parte* and contrary to ordinary procedures—effectively depriving Mr. Manookian the right to defend himself from the allegations against him. Mr. Manookian's "temporary" suspension was indefinite and amounted to a *de facto* disbarment.

The defendants sanctioned, and continue to attempt to sanction, Mr. Manookian for his constitutionally protected, out-of-court speech and retaliated against him for exercising his First Amendment right to petition the government for the redress of grievances. The defendants further deprived Mr. Manookian of due process and equal protection under the law by violating their own procedures, abusing facially unconstitutional procedures, and seeking his suspension in an *ex parte* proceeding in which he was neither entitled to participate nor permitted to submit admissible evidence. Defendants' actions violated the Sherman Act by agreeing to undertake a course of conduct designed to exclude a horizontal competitor from the market for legal services and, more specifically, from the market for victims' medical malpractice representation in particular. Mr. Manookian's unlawful

suspension significantly harms competition in the relevant market, as he is one of the most effective of only a handful of competitors in the market, and he has suffered substantial damages flowing from the exclusion and the violations of his constitutional rights.

**For Defendants:**

The defendants, lawyer members of the Tennessee Board of Professional Responsibility ("BPR" or "Board"), did not suspend Mr. Manookian. The Tennessee Supreme Court, acting on a petition from disciplinary counsel for the BPR pursuant to the authority of Tennessee Supreme Court Rule 9, § 12.3, suspended Mr. Manookian. [Doc. 24-1] The petition was approved by the chair of the BPR. No other board member had any involvement with the initial temporary suspension. Three other board members served on panels that considered and issued Reports and Recommendations [Doc's 24-4, 24-7, and 24-10] in response to the three Petitions for Dissolution [Doc's 24-3, 24-6, and 24-9] of the temporary suspension filed by Mr. Manookian. Five of the named defendants had no involvement with the temporary suspension or consideration of the Petitions for Dissolution.

The Tennessee Supreme Court is obviously not a "nonsovereign actor" and is not controlled by "active market participants" as those terms are used in *North Carolina Dental v. FTC*, 135 S. Ct. 1101 (2015), the decision on which Mr. Manookian bases his antitrust claims. The Supreme Court is vested by the Tennessee Constitution with the judicial power of the State. Its orders are acts of the sovereign. Under Supreme Court Rule 9, § 12.3(a), only the Supreme Court has the power to

temporarily suspend an attorney, and the suspended attorney has an immediate post-deprivation remedy under Rule 9, § 12.3(d).

The BPR is created, and its members are appointed, by the Tennessee Supreme Court pursuant to Rule 9. To the extent that any defendant had any involvement with the temporary suspension at all, they acted within their jurisdiction, as clearly articulated in Rule 9, and under the ultimate supervision of the Supreme Court. The Supreme Court approved their actions by issuance of the Order of Temporary Suspension. [Doc. 24-1] All persons involved are thus entitled to state-action *Parker* immunity.

*North Carolina Dental* has no application here. In that case the State Board of Dental Examiners was created by statute, but its members were elected by dentists, and its actions were not supervised by the State. Acting without statutory authority, that board, at the behest of dentists who had elected them, declared that teeth-whitening constituted the practice of dentistry and effectively barred an entire class of service providers (non-dentists) from the practice of teeth-whitening. This obviously inured to the financial benefit of dentists. Here, the Supreme Court, acting pursuant to its inherent and constitutional authority and in accordance with its Rule 9, has taken disciplinary action against one member of the bar. Mr. Manookian can point to no authority where the disciplinary suspension of one individual member of a regulated profession has been recognized as a violation of antitrust laws.

All claims for damages against defendants in their official capacities are barred by sovereign immunity. The Court thus lacks subject matter jurisdiction over those

claims. Any claim aimed at review or modification of an order of the Tennessee Supreme Court should be dismissed under the *Rooker-Feldman* doctrine because a federal district court has no appellate jurisdiction. Defendants in both their official and individual capacities are immune from claims for damages on grounds of absolute quasi-judicial/quasi-prosecutorial immunity. Defendants also enjoy qualified immunity in their individual capacities.

All of the alleged matters of professional misconduct that served as grounds for Mr. Manookian's temporary suspension are now the subject of ongoing state disciplinary proceedings convened pursuant to the authority of Tennessee Supreme Court Rule 9. Any alleged 42 U.S.C. §1983 claims arising therefrom, including *Ex parte Young* claims for injunctive relief, can be raised as defenses in those proceedings and in proceedings to lift the conditions of reinstatement. Accordingly, consideration of those claims here is barred by the *Younger v. Harris* abstention doctrine.

    C.    ISSUES RESOLVED: Venue.

    D.    ISSUES STILL IN DISPUTE: Liability and damages, jurisdiction, immunities, abstention.

    E.    INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) within 30 days of the initial case management conference, by August 15, 2019.

    F.    DISCOVERY: Discovery is stayed in part pending resolution of the defendants' motion to dismiss (Doc. No. 23), with the following exceptions:

The parties shall exchange initial disclosures as provided in Paragraph E of this Order;

The parties may serve written discovery, but all deadlines to respond are stayed; and,

The parties shall confer to establish a protocol for electronic discovery as provided for in Paragraph G of this Order.

Plaintiff shall move to reset the initial case management conference within 14 days of the Court's resolution of the motion to dismiss.

No discovery disputes may be brought to the Court for resolution before lead counsel for all parties has conducted an in-person meeting and made a good faith effort to resolve any dispute(s). Discovery disputes that cannot be resolved after the in-person meeting should be brought promptly to the attention of the Magistrate Judge by a request for a discovery conference. It will be within the Magistrate Judge's discretion whether to allow for the filing of discovery-related motions. In connection with any discovery conference or discovery motion, the parties shall file a joint discovery dispute statement, which describes the specific discovery requests(s) in dispute and detail each party's position with supporting fact and legal authorities. The joint discovery dispute statement shall certify that lead counsel for all parties conducted the aforementioned in-person meeting and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01, but must clearly state in the filing made in accordance with the timing requirements of Local Rule 7.01 that the joint statement is adopted as the party's memorandum of law or response.

G. ELECTRONIC DISCOVERY: The parties anticipate reaching an agreement on how to conduct electronic discovery. However, if the parties cannot

reach agreement, Administrative Order No. 174-1 shall govern discovery of electronically stored information or e-discovery. Any agreement between the parties to address the topics provided by Administrative Order No. 174-1 must be reduced to writing, signed by counsel, and either filed as a stipulation of agreed-upon electronic discovery procedures, or, if the parties request court approval, submitted as proposed agreed order with an accompanying motion for approval.

H. MODIFICATION OF CASE MANAGEMENT ORDER. Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(h)(1) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

I. REQUESTS TO SEAL DOCUMENTS OR PORTIONS OF DOCUMENTS: Any party requesting that document or portions of documents be sealed, including without limitation for use as exhibits at trial, must file a motion to seal in accordance with Section 5.07 of Administrative Order No. 167 (Administrative Practices and Procedures for Electronic Case Filing) and Local Rule 7.01, which demonstrates compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, **even if unopposed**, must specifically analyze in detail, document by document, the proprietary of secrecy, providing factual support and legal citations. Generally, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access. Failure to comply with these procedures or to provide sufficiently compelling reasons may result in denial of the request to seal document or portions of documents. Protective orders should not provide that document produced in discovery and designated as "confidential" will be automatically sealed upon filing or if used at trial. Any such language in proposed protective orders will be stricken and may result in denial of the motion for entry of the proposed protective order.

It is so ORDERED.

Alistair E. Newbern
U.S. Magistrate Judge