IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN P. MANOOKIAN,<br><br>    *Plaintiff,*<br><br>vs.<br><br>FLOYD FLIPPIN et al.,<br><br>    *Defendants.* | Civil Action No. 3:19-cv-00350<br><br>Judge William L. Campbell, Jr. |

**CORRECTED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

**I. Mr. Manookian's Claims Are Not Barred by Preclusion Principles or the *Rooker-Feldman* Doctrine**

  **A. None of Mr. Manookian's Claims Is Barred by Preclusion Principles**

Defendants' preclusion argument is fundamentally unfounded because there has simply not yet been a final state-court judgment for preclusion purposes because the underlying disciplinary charges—including those from the original suspension—have not yet been heard. Nothing in the Tennessee Supreme Court rules suggests that a temporary suspension is final. In fact, the rule contemplates that further proceedings should be adjudicated. Defendants' argument seeks to piggyback off the original suspension, but the charges underlying the original suspension have not yet been decided.

Moreover, the Tennessee Supreme Court's judgment is not final for claim and issue preclusion purposes because Mr. Manookian can still seek review by the U.S.

Supreme Court of the orders already issued by the Tennessee Supreme Court in this matter. *See, e.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 384 (1985).

Issue preclusion applies only where an issue in two proceedings is *identical*. In the October 17, 2019 Tennessee Supreme Court Order, that court stated: "After reviewing the instant petition for dissolution filed by Mr. Manookian, including the supplemental petition filed on October 15, 2019, the Court finds that Mr. Manookian has not provided *any factual basis* demonstrating good cause for dissolution of his temporary suspension." (Emphasis added.) Because the October 17, 2019 Tennessee Supreme Court Order focused on "factual bas[e]s," the issues decided in that order are not identical to the legal issues regarding the constitutionality of Rule 12.3 that this Court must determine on this motion.

### B. The *Rooker-Feldman* Doctrine Does Not Prevent This Court from Issuing Relief in Favor of Mr. Manookian

Defendants argue that the *Rooker-Feldman* doctrine applies, based on the contention that Mr. Manookian is seeking federal district court review of a state supreme court decision. Mr. Manookian's preliminary injunction motion, however, seeks three forms of prospective relief that defendants: (1) not *again* temporarily suspend Mr. Manookian's license under the procedures of Rule 12.3; (2) immediately grant Mr. Manookian a new hearing in front of impartial panel members; and (3) not engage in future retaliatory actions in violation of Mr. Manookian's First Amendment and due process rights.

2

## II. The *Younger v. Harris* Abstention Doctrine Does Not Apply Here

Defendants also argue that the *Younger v. Harris* abstention doctrine applies. With respect to *Moncier v. Board of Professional Responsibility*, which states that "[t]he Board simply is not a judicial system; thus, a Board member is not an officer of a judicial system," defendants argue that *Moncier* does not say that disciplinary proceedings are not judicial in nature, but rather acknowledges an overlapping of "investigative, prosecutorial, and adjudicative functions" in "administrative agencies, like the Board." 406 S.W.3d 139, 159 (Tenn. 2013). Defendants also cite to *Berger v. Cuyahoga Bar Association*, 983 F.2d 718 (6th Cir. 1993), as "ruling that when a state Supreme Court is the ultimate decision-maker in attorney disciplinary proceedings those proceedings are judicial in nature for *Younger* purposes." Dkt. 49 at 9.

But the simple fact of the matter is that, when put to the question whether the Board's actions are judicial in nature, the Tennessee Supreme Court in *Moncier* said no. 406 S.W.3d at 159.

## III. Mr. Manookian Has Demonstrated a Likelihood of Success on the Merits

### A. Mr. Manookian Did Not Waive Objection to the Impartiality of Panel Members

Defendants concede that recusal requests are contemplated under Section 4.6 of the Tennessee Supreme Court's Rule 9. They argue, however, that Mr. Manookian waived his objection to the impartiality of panel members by waiting too long to raise the issue—at the Sept. 26, 2019 hearing. Dkt. 49 at 3. Defendants cite to only two cases in support of their argument. In the first case, *Wright v. Buyer*,

3

No. W2018-01094-COA-T10B-CV, 2018 WL 3546784, at *3–*4 (Tenn. Ct. App. July 24, 2018), a recusal motion was filed after a probate judge had already dismissed the case—a situation far different from the circumstances here. The other case to which defendants cite—*Davis v. Tennessee Department of Employment Security*, 23 S.W.3d 304 (Tenn. Ct. App. 1999)—concerns a statutory 60-day deadline and is not on point in any way. Mr. Manookian raised the bias issue at the hearing that he was given in this matter. That is not too late; that is timely.

In their waiver argument, defendants also argue that, because Section 12.3(d) requires appointment of at least one Board member on any three-member hearing panel and, if a hearing is held before the full twelve-member panel, nine of the twelve Board members will be attorneys, Mr. Manookian should not be able to throw state attorney disciplinary proceedings into "disarray" by filing suit against all Board members. That argument is baseless. Dkt. 49 at 13.

First, the imperatives of the U.S. Constitution supersede state attorney discipline rules, and states regularly and easily assign unbiased persons to perform administrative agency tasks when constitutional concerns require the states to do so. Second, during this litigation, Mr. Manookian has offered to dismiss any Board member as to whom defendants' counsel would provide evidence that they were not involved in the matters challenged in the complaint. Defendants' counsel has declined to provide any such evidence and has chosen instead to keep all Board members as defendants in the case despite Mr. Manookian's repeated offers to dismiss any Board members who defendants have claimed in past briefing had no

4

involvement. Defendants cannot reap any benefit from a woe-is-us argument where Mr. Manookian has offered to dismiss any uninvolved Board members if given some evidence of who was not involved.

### B. Section 12.3 Lacks Adequate Due Process Protections

Defendants argue that, under Section 12.3, "an immediate post-deprivation hearing is available" and note that Mr. Manookian had a day-long hearing on September 26 about the latest two petitions to reinstate his temporary suspension. *Id*. at 14–15. But Mr. Manookian has never been provided a final adjudicative hearing on the merits as required for due process. *See Barry v. Barchi*, 443 U.S. 55, 66 (1979) (government must provide immediate post-deprivation hearing that finally adjudicates the matter). Rather, he has been provided repeated non-final, non-dispositional hearings at which he has the burden of establishing "good cause" for dissolution of his suspension, and where the Board's allegations are taken as true. This does not even begin to comport with the minimum constitutional requirements articulated in *Barry v. Barchi,* but rather runs directly contrary to them. And while Section 12.3 itself contemplates that a final dispositional hearing on the merits *may* occur, it does not actually require one or provide any framework or timeline within which one must occur. *See* Tenn. S. Ct. R. 9, § 12.3(d) (contemplating temporary suspension until "final disposition of all pending disciplinary charges against said attorney"). As a result, an attorney can be suspended on unproven allegations with no end date to that suspension, and no requirement that the Board even formally bring charges; much less hold a final hearing on those charges. That is precisely what has occurred here.

5

Even if the hearing the defendants' claim as a post-deprivation hearing could suffice for due process—it does not—the fact that a state actor may have stopped violating the Constitution after a lawsuit is filed does not necessarily resolve the constitutional question at issue. By comparison, in the mootness context, the Supreme Court has repeatedly applied the "well settled rule that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" because the defendant could simply resume the practice after the lawsuit. *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). The jurisdictional mootness issue is illustrative of the general principle that the fact that a defendant stops violating the Constitution once a lawsuit is filed does not guarantee that the defendant will not resume the practice later.

### C. Section 12.3 on Its Face and as Applied Violates the First Amendment

Defendants' response has no specific section about the First Amendment, but discusses the First Amendment issues throughout, including the introduction and Section I (re *Rooker-Feldman* doctrine). Those arguments focus on the contention that Mr. Manookian's emails are not protected speech. But that argument is irrelevant to the preliminary injunction motion and is not before the Court because the motion based its First Amendment retaliation arguments not on the emails but on Mr. Manookian's filing of two lawsuits—one against a judge and one against the members of the Board. The filing of lawsuits is an undisputed form of speech that is constitutionally protected against retaliation.

## IV. Defendants' Other Arguments Do Not Justify Denial of Preliminary Injunctive Relief

### A. Defendants' Status Quo Arguments Are Not on Point

In the introduction of their response, defendants argue that the existing status quo is that Mr. Manookian's license has been temporarily suspended and that the Court should therefore deny the requested preliminary injunction. Defendants' depiction of the status quo does not accurately reflect the circumstances of this motion.

As noted earlier, Mr. Manookian's motion seeks a preliminary injunction granting three forms of prospective relief that defendants: (1) not *again* temporarily suspend Mr. Manookian's license under the procedures of Rule 12.3; (2) immediately grant Mr. Manookian a new hearing before impartial panel members; and (3) not engage in future retaliatory actions in violation of Mr. Manookian's First Amendment and due process rights.

With respect to points (1) and (3), the current status quo is that Mr. Manookian is free from such future actions that have not yet occurred. Prospective relief that enforces existing constitutional rights, by definition, does not change the status quo.

With respect to point (2), Mr. Manookian's request for a prompt hearing is precisely what the Due Process Clause guarantees. It is unconscionable for defendants to argue that, having deprived Mr. Manookian of his due process rights, they can continue to do so free from the scrutiny of a federal court because Mr. Manookian's status of being deprived of his due process rights is the status quo.

7

That, quite simply, is not how due process works. *Gershenfeld v. Supreme Court*, 641 F. Supp. 1419 (E.D. Pa. 1986).

### B. Defendants Are Not Entitled to Absolute Immunity Against Mr. Manookian's Claims

Defendants contend they are entitled to absolute immunity because their actions have been either judicial or prosecutorial. Defendants are correct that Section 1983 bars injunctive relief against a judicial officer acting in his or her judicial capacity, but the Supreme Court repeatedly has emphasized that prosecutors are subject to federal injunctions because they are state officers who enforce or threaten to enforce the law. *Cf. Ex parte Young*, 209 U.S. 123 (1908) (permitting injunctive relief against state attorney general). Here, Mr. Manookian seeks two forms of relief that are quasi-prosecutorial, not judiciary or quasi-judiciary. In particular, Mr. Manookian's motion seeks the following forms of relief: a declaration and preliminary injunction that defendants not *again* temporarily suspend Mr. Manookian's license under the procedures of Rule 12.3 and that defendants not engage in future retaliatory actions in violation of Mr. Manookian's First Amendment and due process rights. Those matters are plainly subject to injunctive relief under *Ex parte Young* and its progeny. Accordingly, defendants' absolute immunity argument does not bar injunctive relief here.

### C. Mr. Manookian Has Shown that He Will Suffer Irreparable Constitutional Harm

Defendants did not make any irreparable harm argument in their response. Because Mr. Manookian has presented evidence that his constitutional rights

8
Case 3:19-cv-00350   Document 56   Filed 11/18/19   Page 8 of 12 PageID #: 753

(expression and due process) have been violated, this Court should conclude that he will suffer irreparable harm in the absence of a preliminary injunction.

### D. The Balance of Harms and the Public Interest Favor Entry of a Preliminary Injunction

Defendants' response repeatedly focuses on the Tennessee Supreme Court's finding that Mr. Manookian poses a supposed threat of substantial harm to the public. Defendants ignore that the violation of constitutional rights constitutes irreparable harm, as noted above, as well as the seriousness of the harm to Mr. Manookian given the past retaliation by the Board, and the basic point that it is always in the public interest to ensure that constitutional rights are not abridged.

As of now, Mr. Manookian is no longer able to practice law. This harms not only him, but also his clients, whom he now no longer may represent as long as the suspension remains in effect. This Court should bear in mind that defendants for over 18 months have violated Mr. Manookian's constitutional rights with impunity and without giving him a final and fundamental hearing on the charges underlying the issuance of the disciplinary charges and then claiming that no federal court can review their conduct. A right without a remedy, of course, is not a right. *Mapp v. Ohio*, 367 US. 643, 656 (1961) (explaining that to provide a right without a remedy "is to grant the right but in reality to withhold its privilege and enjoyment"). The Tennessee Supreme Court, by ordering on October 17 that the Board must promptly hold a hearing, is in apparent recognition of these fundamental constitutional points, but Rule 12.3 unconstitutionally fails to provide any framework to guarantee that the due process guarantees are carried out, and the Board—now a full month

after the Tennessee Supreme Court's last ruling—still has not held the hearing it was ordered to hold.

A hearing before the Board, alone, is not a meaningful opportunity for the plaintiff to be heard. "To be meaningful, an opportunity for a full hearing and determination must be afforded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided." *Barry v. Barchi*, 443 U.S. 55, 73–74 (1979) (Brennan, J., concurring in part). "Despite the Board member's recommendation, plaintiff could remain suspended indefinitely because the [state] Supreme Court is under no time constraint within which it must act. Due process, therefore, unquestionably requires a *prompt* final *disposition* of the issues upon which the state has deprived the plaintiff of his property right." *Gershenfeld*, 641 F. Supp. at 1428 (citing and quoting *Mackey v. Montrym*, 443 U.S. 1, 29 n.7 (1979) (Stewart, J., dissenting); *Ciechon v. City of Chicago*, 634 F.2d 1055, 1060 (7th Cir. 1980)).

## CONCLUSION

For these reasons, Mr. Manookian respectfully requests that this Court order the relief requested in his Motion for Preliminary Injunction.

Respectfully submitted,

Date: November 18, 2019

*s/ Aaron Gott*
AARON GOTT
Jarod Bona (admitted *pro hac vice*)
David Codell (admitted *pro hac vice*)
Aaron Gott (admitted *pro hac vice*)
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

10

(858) 964-4589
jarod.bona@bonalawpc.com
david.codell@codell.com
aaron.gott@bonalawpc.com

*Counsel for Plaintiff*

Daniel Horwitz
Tennessee Bar No. 032176
1803 Broadway, Suite #531
Nashville, TN 37203
(615) 739-2888
daniel.a.horwitz@gmail.com

*Local Pro Bono[1] Counsel for Plaintiff*

---

1. Any attorney's fee awarded to Mr. Manookian and earned by Mr. Horwitz shall be donated to the First Amendment Center.

11

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing Corrected Reply in Support of Plaintiff's Motion for Preliminary Injunction has been served on the persons listed below by means of this Court's filing system:

Talmage M. Watts
Senior Assistant Attorney General
Attorney General's Office – Tax Division
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-6431 telephone
talmage.watts@ag.tn.gov

*Counsel for Defendants*

Daniel Horwitz
Tennessee Bar No. 032176
1803 Broadway, Suite #531
Nashville, TN 37203
(615) 739-2888
daniel.a.horwitz@gmail.com

*Local Pro Bono Counsel for Plaintiff*

on this 18th day of November 2019.

*s/Aaron Gott*
AARON GOTT
