# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BRIAN P. MANOOKIAN, | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00350 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| FLOYD FLIPPIN et al., | ) |
| Defendants. | ) |

## MEMORANDUM

Before the Court is Defendants' Motion to Dismiss. (Doc. No. 23). Plaintiff filed a Response (Doc. No. 28), Defendants filed a Reply (Doc. No. 31), and Plaintiff filed a Sur-Reply (Doc. No. 37-1). Also pending before the Court is Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. No. 44). Defendants filed a Response (Doc. No. 49) and Plaintiff filed a Reply (Doc. No. 56). The Court previously denied Plaintiff's motion for a temporary restraining order (Doc. No. 47) and now considers the Motion for Preliminary Injunction.

Plaintiff Brian Manookian is an attorney whose license to practice law in Tennessee was temporarily suspended on September 21, 2018, by the Supreme Court of Tennessee. The Tennessee Supreme Court found that Plaintiff represented a "substantial threat to the public." Order of Temp. Suspension, *In re: Brian Phillip Manookian, BPR #026455*, No. M2018-01711-SC-BAR-BP (Tenn. Sept. 21, 2018) (Doc. No. 24-1).

Plaintiff's claims the Board of Professional Responsibility of the Supreme Court of Tennessee ("BPR") filed the petition for temporary suspension in retaliation for Plaintiff's suit against a state court judge filed one day earlier. In addition, he claims the temporary suspension

is a conspiracy by Defendants, who are individual members of the BPR, to restrain trade and exclude Plaintiff from the legal market in Tennessee. Plaintiff filed this case on April 29, 2019, asserting claims under 42 U.S.C. § 1983 for violation of his rights to free speech, due process, and equal protection, and a claim for conspiracy to restrain trade under the Sherman Act, 15 U.S.C. § 1.

## I. PROCEDURAL BACKGROUND

After filing this case, the disciplinary proceedings at the Tennessee Supreme Court and before the BPR have proceeded.[1] After the September 21, 2018 Order of Temporary Suspension, Plaintiff sought dissolution of the temporary suspension three times—on November 21, 2018, February 27, 2019, and April 9, 2019. At the direction of the Tennessee Supreme Court, a panel held hearings on Plaintiff's petitions for dissolution and issued reports and recommendations. The Tennessee Supreme Court adopted the recommendations of the panels, denying the first two petitions, and granting the third petition on May 17, 2019, subject to Plaintiff's "ongoing compliance with conditions set forth in the panel's Report and Recommendation." Shortly after the initial order of temporary suspension was dissolved, on June 24, 2019, the BPR filed a petition for reinstatement of the temporary suspension. The Tennessee Supreme Court referred the matter for a hearing to the panel that had heard Plaintiff's second and third petitions for dissolution and ordered the panel to submit a report and recommendation on the petition for reinstatement of the temporary suspension. The BPR filed a supplemental petition on August 6, 2019. This petition was referred for hearing and report and recommendation to the same panel. After several delays,

---

[1] The procedural background of the underlying disciplinary proceeding is summarized from the Tennessee Supreme Court's October 11, 2019 Order Reinstating Temporary Suspension. *In re Brian Phillip Manookian, BPR #026455*, No. M2019-00630-SC-BAR-BP (Tenn. Oct. 11, 2019) (recounting procedural history) and from the Order Denying Petition for Dissolution of Order of Temporary Suspension, *In re Brian Phillip Manookian, BPR #026455*, No. M2019-00630-SC-BAR-BP (Tenn. Oct. 17, 2019). The details of the complaints in the disciplinary proceeding are not relevant to the Court's opinion.

the panel conducted a hearing on September 26, 2019, and filed its report and recommendation on October 7, 2019. Plaintiff filed a "Motion to Dismiss Supplemental Petition to Reinstate Temporary Suspension and Objection to the Report and Recommendation" and a supplement to the motion to dismiss. In these motions he argued that the petition does not provide a sufficient basis to reinstate the temporary suspension, that two members of the panel should have recused themselves because they are defendants in this action, and that Tennessee Supreme Court Rule 9, section 12.3, governing attorney disciplinary enforcement, is unconstitutional. The Tennessee Supreme Court denied Plaintiff's motion to dismiss and adopted the panel's finding that Plaintiff "violated a condition of the Order Granting Petition for Dissolution of Order of Temporary Suspension." The court also found Plaintiff "poses a threat of substantial harm to the public" and determined that it "should reinstate the temporary suspension of [Plaintiff's] law license."

The same day the Tennessee Supreme Court issued the Order reinstating Plaintiff's temporary suspension, Plaintiff again petitioned that Court for dissolution of the temporary suspension, which the Court denied on October 17, 2019. In the October 17, 2019 Order, the Tennessee Supreme Court stated, "The most recent hearing demonstrated ample basis for determining that Mr. Manookian poses a threat of substantial harm to the public and for the reinstatement of his temporary suspension." The Court acknowledged pending disciplinary charges and directed that "Mr. Manookian and the Board shall proceed with all due speed toward ultimate resolution of the petition for discipline currently pending before the Board." *Id.*

On October 26, 2019, Plaintiff filed with this Court a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. No. 44). Through that motion, Plaintiff asked the Court to restrain Defendants from "again 'temporarily' suspending Mr. Manookian's law license without due process" and enjoin Defendants from "further retaliating against him for his protected First

3

Amendment activity." (*Id.*) The Court denied Plaintiff's motion for a temporary restraining order on grounds that Plaintiff did not show immediate irreparable harm. (Doc. No. 47).

Plaintiff filed this case against the attorney members of the BPR in their official and individual capacities. He alleges the actions of the BPR constitute a violation of federal antitrust regulations, and violations of his rights to free speech, due process and equal protection. He alleges that the temporary suspension mechanism in Tennessee Supreme Court Rule 9, section 12.3 is unconstitutional on its face and as applied to him. Defendants' moved to dismiss the complaint on grounds of sovereign immunity, *Parker* immunity, and quasi-judicial immunity, and argue that the *Younger* abstention doctrine bars involvement in ongoing attorney disciplinary proceedings.

## II. STANDARD OF REVIEW[2]

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits

---

[2] Defendants' Motion to Dismiss is filed pursuant to both Rule 12(b)(1) and 12(b)(6). The Court did not reach the sovereign immunity defense and accordingly decided the Motion under the standard prescribed by Rule 12(b)(6).

4

attached to Defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (on a motion to dismiss the Court may consider documents referenced in a plaintiff's complaint that are central to plaintiff's claims, matters of which a court may take judicial notice, documents that are a matter of public record, and letters that constitute decisions of a government agency). The Court has considered the record of the disciplinary proceedings before the Supreme Court of Tennessee as referred to in the Complaint and as public records.

### III. ANALYSIS

Defendants assert a variety of abstention and immunity defense as a bar to Plaintiff's claims. Defendants argue: (1) the *Younger v. Harris* abstention doctrine bars claims arising out of the ongoing state disciplinary proceeding; (2) claims for damages in their official capacity are barred by sovereign immunity; (3) claims for damages in their individual capacity are barred by quasi-judicial immunity; and (4) antitrust claims are barred by *Parker* immunity.[3]

### A. *Parker* Immunity Bars Plaintiff's Antitrust Claim

Plaintiff claims "the BPR, along with individual market-participant defendants, entered into an agreement to exclude one of the state's most competitively successful medical malpractice lawyers, Mr. Manookian, from the market." (Comp., Doc. No. 1, ¶ 132). Plaintiff claims the alleged agreement was the decision to "punish" Plaintiff with a temporary suspension of his law license, to publicize the suspension to the media, and to "resist all efforts by Mr. Manookian to

---

[3] Defendants also raise the *Rooker-Feldman* Doctrine as a bar to review of state court decisions "[t]o the extent the state disciplinary proceedings have been concluded." As the state disciplinary proceedings have not concluded and the Court finds Plaintiff's claims are otherwise barred, the Court does not reach the *Rooker-Feldman* issue.

5

petition for dissolution of the suspension." (*Id*., ¶ 134). Plaintiff seeks treble damages under 15 U.S.C. § 15 and injunctive relief under 15 U.S.C. § 26. (*Id*., ¶ 145).

Defendants urge dismissal of Plaintiff's Sherman Act claims on the ground that the action complained of—the temporary suspension—was an act of the Tennessee Supreme Court and entitled to sovereign immunity under the Eleventh Amendment and state-action immunity under *Parker*. Plaintiff argues that the BPR is not entitled to state-action immunity because it did not act pursuant to clearly articulated state policy and was not actively supervised by the Supreme Court.

In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court, relying on principles of federalism and state sovereignty, interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity. *N.C. State Bd. of Dental Examiners*, 135 S.Ct. 1101, 1110 (2015). Without *Parker* immunity, "federal antitrust law would impose an impermissible burden on the States' power" to subordinate market competition to "other values a State may deem fundamental." *Id*. at 1109. "[A] decision of a state supreme court, acting legislatively rather than judicially, is exempt from Sherman Act liability as state action." *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984) (citing *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 790 (1975)); *see also*, *N.C. State Bd*. 135 S.Ct. at 1110 ("State legislation and 'decision[s] of a state supreme court, acting legislatively rather than judicially,' … '*ipso facto* are exempt from the operation of the antitrust laws' because they are an undoubted exercise of state sovereign authority.").

If the action is not "an exercise of state sovereign authority," but is instead a non-sovereign state agency controlled by active market participants, state-action immunity applies only if the actions meets the two-part *Midcal*[4] test as articulated by the Supreme Court in *N.C. State Board*.

---

4     *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc*., 445 U.S. 97 (1980).

135 S.Ct. at 1112. Under *Midcal*, "[a] state law or regulatory scheme cannot be the basis for antitrust immunity unless, first, the State has articulated a clear … policy to allow the anticompetitive conduct, and second, the State provides active supervision of [the] anticompetitive conduct." *Id*. (quoting *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 634 (1992)).

Here, the conduct complained of is that of the Tennessee Supreme Court. The Tennessee Supreme Court issued the Order of Temporary Suspension. "Where the conduct is that of the sovereign itself, … the danger of unauthorized restraint of trade does not arise." *Hoover*, 466 U.S. at 569. The Tennessee Supreme Court Rules specify that the Disciplinary Counsel may petition the court for an order of temporary suspension, but only the Tennessee Supreme Court can temporarily suspend an attorney. Tenn.Sup. Ct. R. 9, § 12.3. At best, Defendants' authority under the Rules was limited to petitioning for an order of temporary suspension and filing reports and recommendations with the Tennessee Supreme Court.[5] Ultimate action on the petition or report and recommendation is vested solely with the Tennessee Supreme Court.

The Supreme Court considered a similar circumstance in *Hoover v. Ronwin*, 466 U.S. 558 (1984). In *Hoover*, the plaintiff alleged anticompetitive conduct with regard to bar admission on the part of individual members of Arizona Supreme Court's Committee on Examinations and Admission. The Supreme Court found that although the Arizona Supreme Court had "necessarily delegated the administration of the admissions process to the Committee," because the court itself had made the final decision to admit or deny admission to practice, the "conduct [the plaintiff] challenges was in reality that of the Arizona Supreme Court" and "is therefore exempt from

---

[5] The Rules do not even appear to confer this much authority on the members of the BPR. The Rules provide that a petition for temporary suspension may be made by Disciplinary Counsel, who reports to the BPR. Tenn. Ct. App. R. 9, §§ 7.1, 12.3. The Board or a panel conducts hearings on a petition for dissolution of temporary suspension and files a report and recommendation with the Tennessee Supreme Court. Id. at § 12.3(d).

7

Sherman Act liability under the state-action doctrine of *Parker v. Brown*." *Id*. at 573. In *Hoover*, the Supreme Court stated that it did not need to address issues of "clear articulation" and "active supervision" when the conduct at issue was in fact that of the Supreme Court. *Id*. at 569.

The Court finds that the *Midcal* test does not apply because the anticompetitive activity complained of was that of the Tennessee Supreme Court which is *ipso facto* exempt from the antitrust laws. Plaintiff cannot evade state-action immunity by suing only the members of the BPR and not the sovereign entity. "If a government actor is independently responsible for causing the alleged antitrust injury, 'once [it] is determined to be immune …, the immunity should be extended to include private parties acting under [its] direction." *Edinboro College Park Apartments v. Edinboro Univ.*, 850 F.3d 567, 574 (3d Cir. 2017) (quoting *Zimomra v. Alamo Rent-A-Car, Inc*. 111 F.3d 1495, 1500 (10th Cir. 1997)). "Otherwise, plaintiffs could sue only the private parties and by winning antitrust judgments against then, could thwart state policies as if there were no state [i]mmunity." *Id*. (quoting *A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc*., 263 F.3d 239, 256 (3d Cir. 2001)); *see also*, *Hoover*, 466 U.S. 569 (alleged anticompetitive conduct by individual members of the bar admissions committee was subject to Parker immunity because the actions complained of were taken by the state supreme court, a sovereign entity).

Although Plaintiff has brought suit against the individual members of the BPR, the anticompetitive action complained of—temporary suspension and dissolution of temporary suspension—was that of the Tennessee Supreme Court, which is immune from antitrust laws under the claims presented in this case.

## B. Absolute Quasi-Judicial Immunity Bars Claims Against Defendants

Defendants assert they are absolutely immune to suits for damages under the doctrine of quasi-judicial immunity. The Court agrees.[6]

Judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's official capacity, unless they were taken in the complete absence of jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "[S]uch immunity has also been extended to non-judicial officers performing 'quasi-judicial' duties." *Quatkemeyer v. Kentucky Bd. of Med. Licensure*, 506 F. App'x 342, 345 (6th Cir. 2012). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847. Quasi-judicial immunity has been extended to members of professional licensing or disciplinary boards that perform investigatory, prosecutorial or judicial functions. *See Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir. 2014) (holding that Chief Disciplinary Counsel for the Board was entitled to quasi-judicial immunity); *Quatkemeyer*, 506 F. App'x at 345-49 (members of the Board of Medical Licensure, an agency of the state, were entitled to quasi-judicial immunity); *Watts v. Burkart*, 978 F.2d 269, 276 (6th Cir. 1992) (members of state medical licensing board entitled to absolute immunity).

In *Moncier v. Jones*, the Sixth Circuit affirmed dismissal of claims for damages against the Chief Disciplinary Counsel of the Tennessee Board of Professional Responsibility, when the conduct alleged to have violated the plaintiff's civil rights occurred when the defendant was

---

[6] Plaintiff only seeks damages against Defendants in their individual capacities for the Section 1983 claims. However, to the extent damages are sought against Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir. 2014) ("[T]he Eleventh Amendment bars official-capacity claims for damages against state officials") (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).

performing her official role as Chief Disciplinary Counsel. 557 F. App'x 407, 409 (6th Cir. 2014). The same conclusion is warranted here. The conduct alleged to have violated Defendant's civil rights—petitioning the Tennessee Supreme Court for temporary suspension of Plaintiff's law license, conducting hearings at the direction of the Court, and drafting reports and recommendations—falls squarely within the duties and obligations delegated by the Tennessee Supreme Court. *See* Tenn. R. App. P. 9, § 4. Accordingly, Defendants are entitled to absolute quasi-judicial immunity from Plaintiff's claims for damages against them personally.

**C. The *Younger v. Harris* Abstention Doctrine Bars Involvement in the Ongoing State Disciplinary Proceedings**

Defendants argue the Court should abstain from review of the merits of this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). "In *Younger*, the United States Supreme Court counseled federal courts to abstain from enjoining certain pending state court criminal proceedings." *Danner v. Bd of Prof'l Responsibility of the Tenn. Sup. Ct*, 277 F. App'x 575, 577 (6th Cir. 2008). "This doctrine is borne out of a 'proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. (quoting *Younger*, 401 U.S. at 44). The doctrine has been extended to ongoing civil proceedings and ongoing state administrative proceedings. *Id*. (citing *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975); *Middlesex Cty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). *Younger* counsels that a federal district court should abstain when: "(1) the underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding." *Danner*, 277 F. App'x at 578.

Plaintiff does not challenge that the State has an important interest in regulating the practice of law or that there is adequate opportunity to raise constitutional challenges in the courts of the underlying proceeding.[7] Instead, Plaintiff argues that *Younger* abstention does not apply because the underlying proceedings are not "ongoing judicial proceedings," and that the claims at issue fall within an exception to the application of *Younger* because the members of the BPR are biased.

State bar disciplinary proceedings are "judicial proceedings." *See Danner*, 277 F. App'x at 578-79; *Fieger v. Thomas*, 74 F.3d 740 (6th Cir. 1996) (holding a board was enforcing rules of professional conduct was performing an adjudicative function and thus satisfied the first requirement for *Younger*); *Berger v. Cuyahoga Bar Ass'n.*, 983 F.2d 718 (6th Cir. 1993) (ruling that when a state supreme court is the ultimate decision maker in attorney discipline proceedings, those proceedings are judicial in nature for *Younger* purposes); *Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006) (investigations into judicial misconduct are an adjudicative function for *Younger* purposes). In *Danner*, the Sixth Circuit specifically considered disciplinary proceedings of the Tennessee Board of Professional Responsibility and held that "the Tennessee disciplinary proceedings at issue are judicial in nature." 277 F. App'x at 579.

If the state proceeding was pending at the time of the filing, the matter is considered "ongoing." *Id*. at 579. The action "remains pending until the litigant has exhausted his state appellate remedies." *Id*. (quoting *Huffman*, 520 U.S. at 609). Plaintiff argues that the proceedings are not "ongoing" because the Order of Temporary Suspension has already been entered and that because the temporary suspension was "not brought in conjunction with any underlying

---

[7] During the course of the underlying disciplinary proceedings before the Tennessee Supreme Court, Plaintiff raised and the Tennessee Supreme Court rejected the constitutional challenge to Rule 9, § 12.3. *See* Order Reinstating Temp. Suspension, *In re Brian Phillip Manookian*, BPR #026455, No. M2019-00630-SC-BAR-BP (Tenn. Oct. 11, 2019).

11

disciplinary action, the proceedings regarding the now-dissolved suspension are not ongoing now." (Pl. Resp., Doc. No. 28 at 23). This argument is flatly contradicted by the long procedural history in the disciplinary proceeding recounted by the Tennessee Supreme Court. *See In re Manookian*, BPR #026455, No. M2019-00630-SC-BAR-BP (Tenn. Oct. 11, 2019). This history shows that not only was the disciplinary proceeding pending at the time the complaint was filed, it is still pending. Moreover, the October 17, 2019 Order Denying Petition for Dissolution of Order of Temporary Suspension clearly indicates that the temporary suspension is part of an underlying disciplinary complaint that is unresolved. *In re Manookian*, BPR #026455, No. M2019-00630-SC-BAR-BP (Tenn. Oct. 17, 2019) (ordering the parties to "proceed with all due speed toward ultimate resolution of the petition for discipline currently pending before the Board").

Even Plaintiff recognizes, in the context of a claim preclusion, that the proceedings are not yet final, arguing that "there has simply not been a final state-court judgment for preclusion purposes because the underlying disciplinary charges—including those from the original suspension have not been heard." (Pl. Reply, Doc. No. 56 at 1). The Court does not suggest Plaintiff is disingenuous in his arguments. Rather, the evolution of Plaintiff's argument reflects the ongoing nature of the disciplinary proceedings at issue and underscores the rationale for abstention from those proceedings.

Plaintiff maintains that even if the prerequisites for *Younger* abstention have been met, the following exceptions to the doctrine allow the case to proceed: bad faith, harassment, and bias. Plaintiff alleges the initial temporary suspension was initiated in retaliation for Plaintiff's filing a lawsuit against a state court judge and issuing a subpoena to the BPR and that thereafter "Defendants and their agents have engaged in an unprecedented, aggressive pursuit of [Plaintiff] since he first sued a state court judge and served a subpoena on the board in the fall of 2018.

Specifically they have: (i) pursued a temporary suspension based on protected out-of-court speech; (ii) failed to bring or adjudicate underlying disciplinary charges for months, asserted that [Plaintiff] had the burden of proof to dissolve the suspension; (iii) engaged in extensive gamesmanship to prevent hearings that would actually put them to their proof; (iv) brought new disciplinary petitions immediately after a suspension was dissolved; (v) filed a new petition to reinstate the temporary suspension based on flagrantly baseless allegations of noncompliance and fabricated misconduct complaints; (vi) refused to recuse themselves; and (vii) disregarded evidence that contradicted their preordained result." (Pl. Br. on Mot. for Prelim. Inj., Doc. No. 43 at 13). The allegations of bias are directed at the alleged financial incentive for the Board Members to remove Plaintiff as competition in the legal market, and the three-member panel that held a hearing on the petition to reinstate temporary suspension when two of the members of the panel are defendants in this case.

"While bias is an exception to *Younger* abstention, it is an extraordinary one, and the petitioner alleging such must offer 'actual evidence to overcome the presumption of honesty and integrity in those serving as adjudicators.'" *Danner*, 277 F. App'x at 580. *Younger* "requires more than mere allegation and more than a conclusory finding to bring a case within the harassment exception. It appears that such a finding must be supported by specific evidence from which it can be inferred that state officials have been enforcing the statute against the plaintiffs in bad faith for purposes of harassment." *Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir. 1976)). Exceptions to *Younger* abstention have been interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

Importantly, the body that effected the temporary suspension was not the BPR, but the Tennessee Supreme Court. The Rules provide that a petition for temporary suspension is made by Disciplinary Counsel to the Tennessee Supreme Court and that "the Court may issue an order …

13

temporarily suspending said attorney." Tenn. R. App. P. 9, § 12.3. As the temporary suspension was not ultimately carried out by the BPR, any alleged bias imputed to the BPR is irrelevant, or, at a minimum, would be cured when the Tennessee Supreme Court reviews the petition. Here, the Tennessee Supreme Court specifically found on more than one occasion that Plaintiff posed a threat of substantial harm to the public that justified the temporary suspension of his law license. There is no allegation that the Tennessee Supreme Court reached this conclusion because of its bias against Plaintiff.

The case cited by Plaintiff, *Gibson v. Berryhill*, 411 U.S. 564 (1973), involved a level of institutional bias not established by Plaintiff's conclusory allegations against individual BPR members. *Gibson* involved a state optometry board on which only independent optometrists were eligible to serve. Plaintiffs were licensed optometrists employed by corporations (i.e. not independent optometrists) who sought to enjoin license revocation hearings before the state optometry board on charges of unprofessional conduct. The alleged unprofessional conduct was employment by a corporation. At the time, almost half of the state's optometrists were employed by corporations. The Supreme Court noted that *Younger* "presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved" and that the state board was "incompetent by reason of bias to adjudicate the issues pending before it." *Id*. at 577-78. The board, which was composed entirely of independent optometrists, sought to revoke the licenses of "all optometrists in the State who were employed by business corporations …, and that these optometrists accounted for nearly half of all the optometrists practicing in Alabama." *Id*. at 578. The Supreme Court affirmed that "the pecuniary interest of the members of the Board of Optometry had sufficient substance to disqualify them, given the context in which the case arose." *Id*. at 579.

The facts alleged here do not present such an extreme circumstance. First, unlike in the *Gibson* where the Board of Optometry had the authority to suspend licenses, the temporary suspensions at issue are made by the Tennessee Supreme Court in the first instance on petition by the Disciplinary Counsel and later on report and recommendation by a three-member panel. At no point in the proceedings to date did the BPR temporarily suspend Plaintiff's law license, nor could it. More importantly, however, the pecuniary interest of the board in *Gibson* is not present here. In *Gibson*, the board effectively sought to revoke licenses of half of the optometrists in the state when those to be excluded from practice were also categorically excluded from participation on the board.

The BPR does not have a pecuniary interest comparable to that of the board in *Gibson* that would disqualify them from hearing the disciplinary charges. The temporary suspension is directed at a single attorney, not an entire category of practitioners; nor is the Rule of Professional Conduct on which Plaintiff's suspension was based a rule that affects Plaintiff but not any of the members of the BPR. Nor is there any indication that the members of the BPR have a pecuniary interest in Plaintiff's suspension sufficient to render the BPR incompetent to adjudicate complaints against Plaintiff. There are over 18,000 licensed attorneys in Tennessee.[8] It strains credulity to conclude that the individual member of the BPR would benefit substantially from the removal of a single attorney, no matter how successful he is.

Moreover, it appears from the record in the disciplinary proceedings before the Tennessee Supreme Court, that Plaintiff is able to raise complaints of bias before the Tennessee Supreme Court. Indeed, in his objections to the report and recommendation of the panel recommending

---

[8] *See* American Bar Association National Lawyer Population Survey (2019), available at https://www.americanbar.org/content/dam/aba/administrative/market_research/national-lawyer-population-by-state-2019.pdf

reimposition of the temporary suspension, Plaintiff objected to the alleged bias of members of the panel. The Tennessee Supreme Court considered and overruled the objection.

Finally, Plaintiff argues that *Younger* abstention does not apply to claims for prospective equitable relief. Plaintiff claims he "specifically seeks prospective relief unrelated to the proceedings that have already occurred." (Pl. Resp., Doc. No. 28 at 22). He requests: (1) that the Court "enjoin defendants from utilizing the 'good cause' standard of § 12.3 or otherwise placing the burden of proof on Mr. Manookian or others"; (2) "enjoin defendants from violating their own procedural rules"; and (3) "enjoin defendants from suspending Mr. Manookian's law license based upon any evidence that it not admissible under the rules of evidence." Although in some circumstances, *Younger* does not preclude prospective equitable relief, the injunctive relief sought here directly and unequivocally applies to the ongoing disciplinary proceedings and is precisely the sort of interference in ongoing state proceedings *Younger* seeks to avoid.

The case cited by Plaintiff, *Wooley v. Maynard*, 430 U.S. 705, 710 (1977), involved an entirely different procedural posture. In *Wooley*, the Plaintiff did not seek prospective relief regarding an ongoing case, but to enjoin future prosecution under a state statute he argued was unconstitutional. The *Wooley* plaintiff had been convicted of violating the state statute multiple times and served time in jail rather than pay a fine, but he did not seek to overturn his previous convictions or expunge his criminal record or any other action that would touch upon the concluded criminal proceedings. Instead, the plaintiff sought to enjoin the state from prosecuting him again. In contrast, the underlying proceeding Plaintiff seeks to affect is still ongoing. As Plaintiff stated, "[T]he Rule contemplates that further proceedings should be adjudicated … the charges underlying the original suspension have not yet been decided." (Pl. Reply, Doc. No. 56 at 1).

Based on the foregoing, the Court finds that abstention pursuant to *Younger v. Harris* is warranted.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. No. 23) is **GRANTED, in part**. Plaintiff's antitrust claim in Court IV is subject to *Parker* immunity and is **DISMISSED WITH PREJUDICE**. The claims for damages against Defendants under 42 U.S.C. § 1983 in Counts I, II, and III are barred by quasi-judicial immunity and are **DISMISSED WITH PREJUDICE**. The remaining claims for injunctive and declaratory relief are **STAYED** pursuant to *Younger v. Harris*. *See Quackenbush*, 517 U.S. at 721 (recognizing the court's power to stay cases based on abstention principles where the relief sought is equitable in nature). In light of the ruling on Defendants' Motion to Dismiss, Plaintiff's Motion for Preliminary Injunction (Doc. No. 44) is **MOOT**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE